No. 2327.

P. H. ROGERS *v.* T. L. TREVATHAN AND WIFE.

WILL — CONSTRUCTION — HOMESTEAD — ELECTION — ACQUIESCENCE — EVI-
DENCE—LIMITATION.—A testator who died in 1852, and who, at his death,
lived with his wife and children on six hundred and forty acres ·of land
which was community property, gave to his. five daughters one hundred
and eight acres each, and the remaining one hundred acres, on which the'
homestead was situated, he gave to his wife, during her life, with remain-
der in fee to one of appellees, who was the daughter of his wife. The
widow and all the immediate beneficiaries recognized the will, and received
the property bequeathed to them. The surviving widow, in 1857, con-
veyed the homestead hundred acres to appellant, who was one of the five
daughters, who held possession thereof until 1883, when suit was brought
by the appellee to recover the one hundred acres devised to her in re-
mainder, the widow having died in 1882. *Held:*

(1) Though the will evinced a purpose to dispose of the wife's com-
munity interest in the six hundred and forty acres, it conferred on the
wife a right she did not possess under the laws in force, for, under the
law as then existing, the homestead belonging to a solvent estate would
have been subject to partition as other property.

(2) The presumption that would otherwise obtain that the testator
intended to dispose of only his undivided interest, is repelled by the spe-
cific bequests which included the entire tract, and by the estate in re-
mainder.

(3) The partition between the widow and children, in accordance with
the provisions of the will, and the deed from the widow to appellant,
who was one of them, conveying the homestead tract, showed the elec-
tion of the widow to take under the will, and the knowledge of appellant
of its provisions.

(4) The declarations of the widow to the effect that her husband had
given all the children land except the appellee, and she was to have the
land the widow lived on after her death, were admissible to prove
knowledge on the part of the widow of the provisions of the will.

(5) Limitation did not run against the appellee, who was under cover-
ture from the date of the deed made by the widow until the death of the
latter, and a judgment in her favor for the one hundred acres devised to
her in remainder. was affirmed.

APPEAL from Trinity. Tried below before the Hon. Norman
G. Kittrell.

In this case the cause was submitted to the presiding judge,

without the intervention of a jury, who found the following conclusions of fact and law:

Conclusion upon the facts:

"First.  That John C. Gallion owned six hundred and forty acres of land in Trinity county, Texas—three hundred and twenty granted to him by the State as assignee of John Conklin, and three hundred and twenty as the assignee of T. L. Trevathan. This fact was proved by oral evidence, without objection, and it was also shown that the parties plaintiff and defendant derived title from a common source, and that the land sued for was one hundred acres out of this six hundred and forty, and part of the same land surveyed by one Hamilton, as shown by the plat and survey offered in evidence, and was the land marked in blue on that plat.

"Second.  That the six hundred and forty acres was the community property of John C. Gallion and Sarah Gallion.

"Third.  That John C. Gallion died in July, 1852, on the land in Trinity county, leaving six daughters, five of them children of the marriage of himself and Sarah Gallion, of which one was the defendant Pheby Rogers, and the sixth the plaintiff Lena Trevathan, daughter of Sarah Gallion, but not claimed to have been born in wedlock of John and Sarah, but to have been Sarah's daughter.

"Fourth.  That the said Lena was known as Lena Gallion, and was married under that name in 1845, and that she was recognized as a child and treated as such and received an equal share with the five other children in certain real estate inherited through the mother of John C. Gallion.

"Fifth.  That John C. Gallion died of consumption about July 24, 1852, and that Mrs. Sarah Gallion died in the early part of 1882, in the seventy-eighth year of her age.  That a short while previous to his death, J. C. Gallion made a will, by the terms of which he gave to each of the five daughters of himself and wife, Sarah Gallion, one hundred and eight acres out of the six hundred and forty hereinbefore described; and to his wife one hundred acres for life, with remainder in fee to plaintiff Lena Trevathan.

"Sixth.  That by the uncontradicted evidence of one witness, who was unimpeached, it was shown that shortly after the death of John C. Gallion, Mrs. Gallion made a deed to the land in controversy, to take effect after her death, to plaintiff Lena Trevathan, and that said deed was duly authenticated and

recorded in Trinity county, but in view of the basis of the judgment to be rendered, a positive finding is not deemed necessary.

"Seventh. That Mrs. Gallion waived her community rights and accepted under the will; that the division, in the proportions therein named, was accepted by all the children; that a division of the same was made on that basis; that the county court set apart the one hundred acres in controversy to Mrs. Sarah Gallion; that Mrs. Gallion declared the land was to go to plaintiff after her (Mrs. G.'s) death; that Mrs. Gallion conducted business in the county court concerning the estate; and these facts, coupled with all the circumstances—including the loss of all the records of the county by fire in 1872, which was shown—taken in connection with the long lapse of time, establishes the conclusion that the will was in fact probated.

"Eighth. That on July 25, 1857, Mrs. Gallion conveyed the land in controversy by warranty deed to the defendant Pheby Rogers, who has paid taxes on and occupied the land by herself or tenants since that time.

"Ninth. That in 1861 the six hundred and forty acres were surveyed in five one hundred and eight acre tracts and a one hundred acre tract, including the improvements; and that the heirs drew for the lots or portions, and that defendant received one of the lots, but that plaintiff took nothing."

Upon these findings as to the questions of fact, the court stated the following conclusions of law:

"First. That the statute of limitations did not run as against plaintiff Lena Trevathan, and the finding on that ground is against defendant.

"Second. That the execution and probate of the will, and the acceptance under it of Mrs. Gallion, vested in her a life estate in the one hundred acres sued for with remainder over to Mrs. Lena Trevathan, plaintiff.

"Third. That Mrs. Gallion's interest in the land in controversy being a life estate she could not convey any greater estate by the deed to defendant, and that the estate so conveyed ended and determined on the death of Mrs. Gallion, and the property in controversy then vested in plaintiff Lena Trevathan.

"Fourth. That said plaintiff Lena Trevathan, is entitled to recover said land, and judgment is rendered for her, for the same against defendant, with writ of possession, and for all costs incurred.

*J. P. Stevenson* and *L. T. Robb*, for appellants, cited 1 Green-leaf on Evidence, sections 99, 100; Portis v. Hill, 14 Texas, 69; Marsh v. Weir, 21 Texas, 107; Howard v. Colquhoun, 28 Texas, 149; Thurmond v. Trammell, 22 Texas, 257; Gonzales College v. McHugh, 26 Texas, 677; Ochoa v. Miller, 59 Texas, 460; Carlton v. Baldwin, 27 Texas, 572; Howard v. McKenzie, 54 Texas, 171.

*J. R. Burnett,* for appellee.

STAYTON ASSOCIATE JUSTICE.    The trial court found that the property in controversy was of the community estate of John C. and Sarah Gallion, that the former died testate in the year 1852, and that by the terms of his will the appellee was to have the land in controversy after the death of her mother.    It was further found that Mrs. Gallion recognized the will and consented to take under it, and that all the beneficiaries under it did the same. The records of the county court having been destroyed by fire, the court also found that the acts of the parties in interest under it, in connection with all the evidence in the case, required a finding that the will was properly probated soon after the death of John Gallion.

We are of the opinion that these findings were justified by the evidence, or at least that it can not be said that the findings are without evidence to sustain them.    The entire tract of six hundred and forty acres, of which the land in controversy is a part, was community property, and of that Mrs. Gallion owned one half.    By the terms of this will, as found, the testator gave of that tract to each of his five children one hundred and eight acres, and the remaining one hundred acres, embracing that part used as homestead, he gave to his wife during her life, with remainder to Mrs. Trevathan.    This clearly evidenced the intention of the testator to dispose of property which was not his own, and at the same time to confer upon his wife a right which she would not have, if his estate was solvent; for under the law then in force, the homestead belonging to a solvent estate would have been subject to partition as other real property.    This presented a case in which the wife was called upon to elect whether she would take under his will.

Having only an undivided interest in the land, were the terms of the will ambiguous, the testator would be presumed to have intended to devise only his interest in the entire tract, but the specific devises of a certain number of acres to each of his five

children, and of the named residue to his wife for life, with remainder to Mrs. Trevathan, leave no doubt of his intention to dispose of the entire tract.

The subsequent partition between the several devisees in accordance with the will, and the subsequent conveyance by Mrs. Gallion to Mrs. Rogers of the one hundred acres, leave no doubt that the former knew that the will, in terms, disposed of the entire tract, and of the further fact that Mrs. Gallion elected to take under it. The evidence tends strongly to show that Mrs. Trevathan was a child of John C. and Sarah Gallion, though born out of wedlock.

There was evidence tending to show that Mrs. Gallion conveyed the land, reserving a life estate to herself, to Mrs. Trevathan before she made the conveyance to Mrs. Rogers, but the court made no specific finding in this respect, and based the decision upon the will, and it therefore becomes unnecessary to inquire whether the evidence was sufficient to have required a finding that such a deed was made.

The declarations of Mrs. Gallion, proved by the witness Womack, were admissible—if for no other purpose—to show that she knew the terms of the will. The declarations of Mrs. Gallion, testified to by Lena and T. L. Trevathan, were admissible, and no other objection than that such evidence was hearsay was urged, and none other can now be considered. In so far as they testified to the making of a deed to Mrs. Trevathan by Mrs. Gallion, they were testifying to facts which become unimportant in view of the ground on which the case was disposed of.

The other assignments need not be considered further than they are embraced in what has already been said. The judgment will be affirmed.

*Affirmed.*

Opinion delivered February 18, 1887.