GULF, C. & S. F. RY. CO. v. BRANDEN-
BURG et ux. (No. 1288.)

(Court of Civil Appeals of Texas. Texarkana.
April 22, 1914. Rehearing Denied
May 7, 1914.)

1. WILLS (§ 559*)—PROPERTY DISPOSED OF—
ELECTION BY SURVIVING WIFE.

Where a will is uncertain as to whether
testator disposed only of his own property or
included that which belonged to his wife, the
will will be construed to simply dispose of his
estate, and the wife, taking under the will, does
not thereby relinquish her fee-simple title to
her community share in the property disposed
of by the will.

[Ed. Note.—For other cases, see Wills, Cent.
Dig. §§ 1207–1209; Dec. Dig. § 559.*]

2. WILLS (§ 559*)—CONSTRUCTION—PROPERTY
DEVISED.

A will whereby testator "lent" unto his
wife for life all of his estate, and after her
death all his property should be divided among
his legal heirs, disposed only of his community
interest in the estate, and the wife, electing
to take under the will, did not relinquish her
fee-simple title to her community share.

[Ed. Note.—For other cases, see Wills, Cent.
Dig. §§ 1207–1209; Dec. Dig. § 559.*]

3. TENANCY IN COMMON (§ 3*)—CREATION OF
COTENANCY—TRANSFER BY WIFE.

Where testator devised his community in-
terest to his wife for life, with gift over to his
children, a conveyance by the wife vested in
the grantee an undivided interest and made him
a tenant in common with the children.

[Ed. Note.—For other cases, see Tenancy in
Common, Cent. Dig. §§ 5–17; Dec. Dig. § 3.*]

4. ADVERSE POSSESSION (§ 10*) — RIGHT OF
WAY—ACQUISITION BY RAILROAD.

Const. art. 1, § 17, providing that no per-
son's property shall be taken for a public use,
without adequate compensation first made, does
not prevent a railroad from acquiring by ad-
verse possession title to land occupied by it as
a right of way.

[Ed. Note.—For other cases, see Adverse Pos-
session, Cent. Dig. §§ 58–64; Dec. Dig. § 10.*]

5. TENANCY IN COMMON (§ 11*)—CONVEYANCE
BY TENANT — RIGHTS OF GRANTEE AS
AGAINST COTENANTS.

Where a grantor conveying a permanent
easement or a title had only an undivided inter-
est, the grantee taking possession could assert
only the rights of a tenant in common; but
his right to retain possession could not be made
dependent on payment of the entire value of
the land.

[Ed. Note.—For other cases, see Tenancy in
Common, Cent. Dig. §§ 23, 28; Dec. Dig. §
11.*]

Appeal from District Court, Dallas County;
E. B. Muse, Judge.

Action by B. F. Brandenburg, Sr., and wife,
against the Gulf, Colorado & Santa Fé Rail-
way Company. From a judgment for plain-
tiffs, defendant appeals. Reversed and re-
manded.

Terry, Cavin & Mills, of Galveston, Lee &
Lomax, of Ft. Worth, and E. M. Browder, of
Dallas, for appellant. W. H. Clark, of Dal-
las, for appellees.

HODGES, J. The appellees, Brandenburg
and wife, brought this suit in the form of
an action of trespass to try title to recover

two tracts of land described as 320 acres of
the Sharrock survey and 23 acres of the
Bledsoe survey situated in Dallas county.
The appellant disclaimed as to all of the land
described in the petition, except a strip 100
feet wide running through the two tracts,
and used as a railroad right of way. It was
alleged by the appellant that on the 8th day
of April, 1881, its predecessor, the Chicago,
Texas & Mexican Central Railway Company,
acquired this strip of land by purchase from
Mrs. M. C. Merrifield. It also pleaded a title
to the land, and to the right of way as an
easement, by prescription based upon an ad-
verse claim and possession for more than ten
years.

The evidence adduced upon the trial shows
that the two tracts of land referred to were
formerly owned by Wm. Merrifield and his
wife as a part of their community property.
Merrifield died in 1880 and left a will, from
which we quote the following as the only
portions material to be here considered:

"And whereas, the property which I now
possess have been chiefly acquired by the joint
industry of my dear wife, Martha Catherine,
and myself, I therefore, the better to enable her
to live with convenience and comfort, do there-
fore, by this my last will and testament, lend
unto my said wife during her natural life all of
my estate without reserve, both real and per-
sonal, and after the death of my wife, Martha
Catherine Merrifield, I then wish and devise
an equal division of all my property, both real
and personal, among all my legal heirs, and
lastly my express will and meaning is, and I do
hereby order and desire if any difference, dis-
pute, question or controversy shall be named,
arise or happen concerning my gift, bequeath
or other matter in this my last will and testa-
ment, that then no suit or suits in law or
equity, or otherwise, shall be brought, com-
menced or prosecuted for and concerning the
same, but the same shall be referred wholly to
the award and determination of my friends, and
what they shall order, direct or determine there-
in shall be binding and conclusive to all and
every person and persons therein concerned.
My desire and intention is that no action be
taken in the probate or county court in rela-
tion to the settlement of my estate further than
the probate and registration of this my last
will and testament and the return of an inven-
tory of the estate and also that no security be
required of my executrix but that she have
full control of my whole estate. And, lastly, I
do hereby constitute and appoint my dear wife,
Martha Catherine Merrifield, my sole executrix
of this my last will and testament, revoking and
annulling all former wills by me heretofore
made, ratifying and confirming this and none
other to be my last will and testament."

At his death Merrifield left eight children
surviving him. On the 8th day of April,
1881, Mrs. Merrifield executed a conveyance,
which is as follows:

"The State of Texas, County of Dallas.

"Know all men by these presents, that for
and in consideration of the enhanced value to
be given, and is contemplated to arise to my
lands and other property, by the location and
construction of the Chicago, Texas & Mexican
Central Railway, and for the consideration of
one hundred and fifty-six ($156) dollars to me
in hand paid, the receipt of which is hereby
acknowledged, I, Margaritt C. Merrifield, of

the county of Dallas and state of Texas, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, to the Chicago, Texas & Mexican Central Railway Company a strip of land one hundred feet in width over the tracts of land particularly described as follows, viz.: A tract in Dallas county, state of Texas, known as part of the original headright of Geo. W. Sharrack, patented to himself, for three hundred and twenty acres on Five-Mile creek 8½ miles south 40 west from the city of Dallas, and purchased by William Merrifield of John M. Froman, who purchased of said Sharrack, and which I hold under the last will and testament of said Merrifield, being the same upon which I now reside; reference being made for a more certain description of said strip of land to the map of the route of said company on file in the office of the said railway company.

"To have and to hold said above-described strip of land as a right of way for the said Chicago, Texas & Mexican Central Railway, with all the rights, privileges, and easements incident thereto, or in any wise connected therewith, to the said Chicago, Texas & Mexican Central Railway Company, its successors and assigns forever. And I, the said M. C. Merrifield, for myself, and my heirs, do covenant and agree that I will warrant and defend the above-granted right of way in the quiet and peaceable possession of the said Chicago, Texas & Mexican Central Railway Company, its successors and assigns forever."

Then follow some immaterial conditions.

The Chicago, Texas & Mexican Central Railway Company was a Texas corporation, authorized to acquire and hold lands for railway purposes. In November, 1882, Mrs. Merrifield died intestate, and was survived by her children. During the years 1881 and 1882, and prior to the death of Mrs. Merrifield, the Chicago, Texas & Mexican Central Railway Company constructed its line of railway from Cleburne to Dallas, passing over the two tracts of land before referred to, and continuously operated trains over that line until about the 10th day of July, 1885, at which time it conveyed all of its interest and right of way, including that acquired from Mrs. Merrifield, to the appellant, the Gulf, Colorado & Santa Fé Railway Company. From the date of that conveyance the appellant has continuously made a similar use of the property. Mrs. Brandenburg is a daughter of Wm. and M. C. Merrifield, and after the death of the latter Brandenburg purchased the interests of the other heirs in the Merrifield estate. Brandenburg testified that the railway company fenced its right of way about the year 1895; that prior to that time he used all of the land, including the right of way, as a pasture for his stock. It is to be inferred from his testimony that the right of way was within his general inclosure. He also stated that, after the right of way was fenced, he used a part of it as an orchard; that he had planted a number of fruit trees inside of the railway inclosure. It also appears from Brandenburg's testimony that for several years after the death of Mrs. Merrifield there was some dispute between him and the officers of the railway company as to who owned the right of way. He states that in more than one conference with those officials

they conceded that he was entitled to an undivided half interest in that land, and that they offered to purchase this interest. No settlement, however, was ever made, and this suit resulted.

The court concluded, as a matter of law, in substance as follows: (1) That the will of Wm. Merrifield undertook to dispose of the entire community estate of himself and wife. That Mrs. Merrifield, by accepting under the will, was estopped from claiming more than a life estate in the land, and that her conveyance to the Chicago, Texas & Mexican Central Railway Company in legal effect transferred only her life interest in the strip of land used as the right of way. (2) That under the Constitution of Texas a railway corporation cannot acquire by limitation the fee-simple title to land for right of way purposes.

The court then submitted to the jury the following interrogatories, which we quote together with the answers returned:

"First Question: Was the possession of the Gulf, Colorado & Santa Fé Railway Company to the 100-foot strip of land described in its answer exclusive (as the term 'exclusive' has been defined herein) for ten years next preceding the filing of this suit in 1904? Answer: No. John F. Giles, Foreman.

"Second Question: Was the possession of said railroad continuous to the 100-foot strip of land described in its answer for ten years next preceding the filing of this suit? Answer: Yes. John F. Giles, Foreman.

"Third Question: Did said railroad assert adverse claim of right, as that term is above defined for you by the court, to the said 100-foot strip of land for ten years next preceding the filing of this suit? Answer: Yes. John F. Giles, Foreman.

"Fourth Question: Did the said railroad make to the plaintiffs any claim of title to the said 100-foot strip of land during the ten years next preceding the filing of this suit? If so, what interest did defendant claim? Answer: Yes; all of the 100-foot right of way. John F. Giles, Foreman.

"Fifth Question: Did said railroad recognize that plaintiffs had any title in and to said 100-foot strip of land for and during the ten years next preceding the filing of this suit? Answer: No.

"If so, what interest in said strip of land did it recognize plaintiffs owned? Answer: None. John F. Giles, Foreman.

"Sixth Question: Did plaintiffs use said strip of land from the time said railroad was built, in 1881 or 1882, until it was fenced in by the railroad, in 1892 or 1894? If so, how and when? Answer: Yes; by grazing. John F. Giles, Foreman.

"Seventh Question: Did plaintiffs use said 100 (foot) strip of land from the time it was fenced in until the filing of this suit? Answer: Yes; part of it.

"If so, how and when? Answer: As orchard entire time. John F. Giles, Foreman."

There were seven other interrogatories propounded and answered; but they relate to the value of the land, and to the amount of damages occasioned by the construction of the road and the appropriation of the right of way. Those are matters not material to be here considered.

Upon the answers above given the court rendered a judgment in favor of the appel-

lees for the title and possession of the land sued for. But it was further ordered:

"That the defendant, by paying into the registry of the court for the plaintiffs $991.75 within 30 days from the date this judgment becomes final, with 6 per cent. interest thereon from date until paid, shall thereupon be entitled to hold and use said right of way, the same as if it had lawfully condemned same; otherwise the judgment above in favor of the plaintiffs to said strip of land shall remain in full force and effect."

It is contended by the appellant that the court erred in holding that Mrs. Merrifield, by taking under the will, relinquished her fee-simple title to her community share in the property, and was thereafter entitled only to an estate for life. This construction limited the interest conveyed to appellant's predecessor by Mrs. Merrifield's deed to an estate which expired at her death.

[1] The first question, then, to be considered is: Did the court err in the construction placed upon the will? In cases of this character, in order for the wife to be put to an election, the intent of the husband to dispose of her community interest must be clear and explicit. Where the language used is ambiguous and leaves it uncertain as to whether the testator is referring only to his own interest or intends to include that which belongs to his wife, the instrument should be considered as referring to that interest which the testator might lawfully dispose of. Carroll v. Carroll, 20 Tex. 743; Haley v. Gatewood, 74 Tex. 281, 12 S. W. 25; Rogers v. Trevathan, 67 Tex. 406, 3 S. W. 569; 1 Pomeroy Eq. Jur. §§ 472, 493.

[2] In the instrument here under consideration the testator designates the property disposed of by no particular name or specific description. He simply refers to it as "the property," "the property which I now possess," "all my estate," "all my property, both real and personal," "my estate," "my whole estate." The will makes it clear that the testator intends to give to his wife during her natural life all of his estate, passing it to his children or heirs after her death. In the absence of language more specific, we must presume that Merrifield was referring to that which was in fact his property—his community interest in the estate. Sauvage v. Wauhop (Tex. Civ. App.) 143 S. W. 260; Haby v. Fuos (Tex. Civ. App.) 25 S. W. 1121; Moss v. Helsley, 60 Tex. 432; Gibony v. Hutcheson, 20 Tex. Civ. App. 581, 50 S. W. 648. We also refer to the cases previously cited.

[3] It follows from this conclusion that the conveyance executed by Mrs. Merrifield invested the Chicago, Texas & Mexican Central Railway Company with an undivided interest to at least a permanent easement in so much of the right of way as was included in the Sharrock survey. This made the appellant, as successor to that company, a tenant in common with Brandenburg, to the extent of the easement in the strip claimed, and clothed it with all the rights of possession which a tenant in common might claim.

[4] We come, then, to the consideration of the next question: Did the court err in concluding, as a matter of law, that the appellant, being a railway corporation, could not acquire by adverse possession the fee-simple title to the land occupied as a right of way? The conclusion of the court upon this proposition appears to be based upon section 17 of article 1 of our state Constitution. That part applicable is as follows:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the state, such compensation shall be first made, or secured by a deposit of money."

This provision against taking private property for a public use has reference to the taking of private property by the state, or through some of its authorized agencies or corporations, under the power of eminent domain. Norris v. City of Waco, 57 Tex. 635. "Taking" property, as used in the section of the Constitution referred to, includes the permanent subjection of such property to a public easement, as well as to a transfer of the fee-simple title. G., C. & S. F. Ry. Co. v. Lyons, 2 Willson, Civ. Cas. Ct. App. § 139. Hence, if this provision of the Constitution prohibits railway corporations from acquiring the fee-simple title to property by limitation or prescription, it would for the same reason prohibit them from acquiring a permanent easement. The acquisition of either would amount to a "taking" of private property within the meaning of the Constitution. It also follows that, if this provision of the Constitution bars railway companies from acquiring property by limitation for right of way purposes, because they may invoke the state's right of eminent domain and condemn land, municipalities having the same authority should also be subject to the same restriction. The following cases, however, show that counties may acquire such rights to establish highways over private property by limitation, notwithstanding they are authorized to condemn land for that purpose: Click v. Lamar Co., 79 Tex. 124, 14 S. W. 1048; City of Austin v. Hall, 93 Tex. 596, 57 S. W. 563. In the trial below the court recognized that the railway company could acquire title to an easement over the land in controversy by prescription, and submitted to the jury those issues. In doing this he recognized as correct the principle of law which warranted the submission of the issues relating to the acquisition of the title itself by adverse possession, if the evidence was sufficient.

Our conclusion is that the undisputed evidence in this case establishes the right of the appellant to a permanent easement to the extent of an undivided one-half interest in so much of the strip of land as is contained in the Sharrock survey. Mrs. Merrifield was herself but a joint owner, with her chil-

dren, of the fee in these tracts of land, and she had no authority to convey for a time extending beyond her life any rights to any specific portion of the property. Her interest being undivided, her deed conveying a permanent easement or the title to any described portion, such as the right of way, would be void as to her co-owners. But her grantee acquired such rights as she had in the land, to the extent described in the conveyance, and became a tenant in common with the children upon her death. As such tenant her grantee could assert all the rights belonging to a co-owner as to possession, and would be entitled, in a partition, to have this particular land set apart to it, if this could be done without injustice to the other joint owners.

Whether or not the appellant acquired any rights in the Sharrock survey by adverse possession must be determined by the rules applicable to tenants in common. Honea v. Arledge, 56 Tex. Civ. App. 296, 120 S. W. 508.

[5] What has been said relative to Mrs. Merrifield's conveyance applies only to the Sharrock survey. That portion of the land in controversy which lies in the Bledsoe survey belongs to the appellees, unless the appellant has acquired some rights by prescription. Whether or not that has been accomplished is an issue of fact to be determined by the jury. All of the findings upon that issue made by the jury were favorable to the appellant, except as to the exclusiveness of its possession. The title and right of possession of the entire strip 100 feet wide through both tracts being involved, we cannot say the court erred in not instructing a general verdict for the appellant. It may be that appellees are entitled to recover the title, but not the possession. We think the court erred in making the retention of the possession by the appellant dependent upon the payment of the value of all of the strip of land. That disposition of the case ignored the rights which appellant acquired through the conveyance from Mrs. Merrifield.

The judgment will therefore be reversed, and the cause remanded for another trial.