## PAYNE v. FARLEY. (No. 1495.)

(Court of Civil Appeals of Texas. Texarkana. June 3, 1915.)

1. WILLS ⟺577—CONSTRUCTION—PROPERTY INTENDED TO BE BEQUEATHED.

A testator owning 104 acres of land and personal property, all of which was community property, devised 50 acres of land to his wife for life and bequeathed to her specific personal property and "all of my personal property not appropriated or described, also my money on deposit in the First National Bank"; the will further providing that this property last given should go to pay taxes, doctors' bills, and burial expenses. The personal property not appropriated or described consisted of growing crops. The will also devised land and personal property to the children. Held that, while the will showed a clear intention to dispose of the community interest of both the testator and his wife so far as concerned the land and the particular personal property set aside to each legatee, it showed no such intention as to the crop and money on deposit, but only disposed of the testator's one-half thereof, and the wife took such one-half interest subject only to the debt specified.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1257; Dec. Dig. ⟺577.]

2. APPEAL AND ERROR ⟺704 — RECORD — MATTERS PRESENTED FOR REVIEW.

A testator owning 104 acres of land and personal property all of which was community property bequeathed to his wife more than one-half of the personal property and 50 acres of land for life. Held that, as the value of the land did not appear, the trial court's finding that she did not receive more free and disposable property than she was entitled to as her half interest in the community property could not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2900, 2939–2941; Dec. Dig. ⟺704.]

3. WILLS ⟺792—ELECTION—PROVISIONS FOR SURVIVING WIFE.

A testator owning 104 acres of land devised 50 acres to his wife for life and also bequeathed personal property to her, but it appeared that she did not receive any more free and disposable property than she would have been entitled to as her community interest. The wife was an ignorant negro, was not informed, and did not know of her right to take under the will or to take one-half of the community property, and was not advised or informed of what would constitute an election. It did not appear that she knew or understood that the will attempted to give her only a life estate. She claimed the 50 acres of land as her own and conveyed it. Held, that the conclusion that she did not elect to take under the terms of the will was warranted, as consent and acquiescence must have been made understandingly, sometimes, even of the person's rights under the law.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2049–2052, 2061–2063; Dec.Dig. ⟺792.]

Appeal from District Court, Harrison County; P. M. Young, Judge.

Action by Nelson Payne against Harriett Farley. Judgment for defendant, and plaintiff appeals. Affirmed.

An action by appellant against appellee of trespass to try title to a specific tract of 50 acres of land. The defendant's plea was not guilty. In a trial before the court without a jury, judgment was for the defendant for the land.

Appellant claims title under the terms of the will of Jim Payne, his father, and the appellee claims title under a deed from Prozilla Payne, surviving wife of Jim Payne. According to the uncontroverted evidence, Jim Payne and Prozilla Payne were husband and wife, and had acquired during their marriage a tract of 104 acres of land, and occupied and used it as their homestead. The 50 acres in suit is a part of the 104 acres. Nelson Payne, appellant, is a son of Jim Payne by a former marriage. Harriett Farley is the granddaughter of Jim Payne, and is of no blood kin to Prozilla Payne, but she was reared from childhood by Jim and Prozilla Payne. Jim Payne died in August, 1892, testate, with his wife Prozilla and three children and two grandchildren of a former marriage surviving him. The will was duly probated in October, 1892. The will disposed of the 104 acres of land and all the personalty, which was community property, as follows:

(1) Devising to Prozilla Payne, wife, "50 acres of land for a home during her lifetime," and two mules, one horse, one wagon and harness, one hack, four cows, all of the household and kitchen furniture and cooking utensils, farm tools and implements, and "all of my personal property not appropriated or described, also my money on deposit in the First National Bank." "It is my will that the last property given to my wife shall go to pay taxes on all the property for the year 1891 and for doctors' bills and burial expenses." (2) "At the death of Prozilla Payne the above 50 acres of land shall go to my son Nelson Payne and his heirs and assigns." (3) Devising to Nelson Payne 29 acres to be cut out of the south side of the tract adjoining the 50 acres above. (4) Devising to his granddaughters Julia and Betsey Johnson, children of his daughter Caroline Johnson, 12½ acres. (5) Devising to his daughter Matilda Fitzpatrick 12½ acres more or less, and one cow. (6) Devising to his son Homer one cow.

The trial court specifically finds:

"Third. I find as a fact that there were four children of Jim Payne, and that Nelson Payne, the plaintiff in this case, being one of said four children, received under said will, and now retains possession of, 29 acres of the 104 acres of land belonging to the community estate of Jim and Silla Payne, and that said 29 acres received by Nelson Payne was more than he would have been entitled to as one of the four children, under the law of descent and distribution. I find that each of the legatees and devisees named in the will of Jim Payne received the

items of property specified therein and devised to such legatees or devisees.

"Fourth. I find that Prozilla Payne received all of the property devised to her under the will. I find that the residue of the estate was not of a value exceeding the expenses of last illness, doctors' bills, taxes, etc., mentioned in paragraph 7 of the will. I find that said expenses and bills exceeded the value of the residue of the property, and that under the terms of the will such residue was applied to the payment of such expenses. I further find that Prozilla Payne did not receive under the will of Jim Payne any more free and disposable property than she should have been entitled to as her one-half interest in the community property under the laws of descent and distribution, including the widow's allowance and exemptions which she was entitled to under the law though she received the property bequeathed to her by the will; and that the will of Jim Payne only attempted to give her a life estate in slightly less than her half of community interest in the real estate. I find that Prozilla Payne never understood that by the terms of the will she was to receive only a life estate in the land in controversy.

"Fifth. I do not find that there was any explanation of the meaning of the will to Prozilla Payne, but I find that she heard the contents of the will read. I find that Prozilla Payne was an ignorant negro woman, being an ex-slave, and that she was not informed or advised of her rights to take under the will or to take her one-half of the community property, nor was she advised or informed of what would constitute an election to take under the will, or the effect thereof; that she received all the property bequeathed to her by the will, but that there is no express election by her shown by the evidence, and her holding of the property in controversy in the manner that she did was not inconsistent with her rights to claim her half of the community property and her widow's allowance and exemptions. And there is no evidence that she knew or understood that the will attempted to give her only a life estate in the land in controversy, or that she took and held said land under the claim of a life estate therein, but that she did claim the land as her own, and claimed the right of conveying or disposing of it without regard to the provisions of the will, attempting to give her only a life estate, and that no one has (lost) or will lose anything to which they are otherwise legally entitled if it should be held that Silla Payne did not elect to take under the will.

"Sixth. I further find as a fact that prior to her death Prozilla Payne executed and delivered to the defendant, Harriett Farley, an instrument which was in form a general warranty deed conveying to the defendant, Harriett Farley, the property in controversy, and that the said instrument was intended by the said Prozilla Payne to be a general warranty deed conveying the property to the defendant, Harriett Farley, and that at the time of making, executing, and delivering the same Silla Payne was sound of mind.

### "Conclusions of Law.

"I conclude that Prozilla Payne, grantor of the defendant, Harriett Farley, did not elect to take under the will of her husband, Jim Payne, and that the land in controversy was her own land, being a part of her half interest in the community estate of herself and deceased husband, Jim Payne, and that her title to the same was not affected by the will of Jim Payne, deceased.

"Second. I conclude that the deed executed by Prozilla Payne to the defendant, Harriett Farley, is a valid, general warranty deed, and conveyed the title to the property in controversy to the defendant, Harriett Farley, free from the claim made by the plaintiff, Nelson Payne, based upon the will of his father, Jim Payne.

"Third. I conclude that the defendant, Harriett Farley, is the owner, in fee simple, of the 50 acres of land in controversy, and entitled to judgment for the title and possession of the same as against the plaintiff herein, Nelson Payne."

As the evidence supports these findings, they are here adopted.

Lane & Lane, of Marshall, for appellant. J. H. T. Bibb and F. M. Scott, both of Marshall, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] Appellant challenges the findings in the finding of fact "that the residue of the estate was not of the value exceeding the expenses of last sickness, doctors' bills, and taxes mentioned in the will," and "that Prozilla Payne did not receive under the will of Jim Payne any more free and disposable property than she would be entitled to as her one-half interest in the community property under the laws of descent and distribution, including the widow's allowance and exemptions which she was entitled to under the law though she received the property bequeathed to her by the will." As to whether the wife did not receive in the evidence any more free and disposable property than she was entitled to as her half interest in the community property, somewhat depends upon the construction of the will. There is a clear and unmistakable intention on the part of Jim Payne, the testator, to dispose of the community interest of both himself and his wife so far as concerns the land and the particular personalty set aside to each legatee. The language shows a devise of such property as an entirety. But, dealing with the personalty not so specifically devised, the seventh clause provides:

"It is lastly my will and I give and devise to my beloved wife Prozilla Payne all of my personal property not appropriated or described in the foregoing, also my money on deposit in the First National Bank of Marshall. It is my will that the last property given to my wife shall go to pay taxes on all the property for the year 1891 and for doctors' bills and burial expenses."

Disposing of "my personal property" and "my money," as this clause does, would not appear to show, considered in connection with the language and intent of the preceding clauses, an intent on the part of the testator to dispose of his wife's interest in this specific part of the community property. According to the evidence, the entire "personal property not appropriated or described in the foregoing" consisted of the growing crop, which was two bales of cotton, 70 or 80 bushels of corn, 15 bushels of potatoes, and 1½ bushels of peas. The money on deposit was $20. This particular property was all community property. The trial court construed the clause as not showing an intention to devise the crop and money as an entirety, but only as a disposition of the testator's one-

half of this part of the community property. And this being a correct construction of this provision (1 Pomeroy, Eq. Jur. § 475), the wife took the husband's half interest in the crop and money absolutely, subject only to the debts specified. There is evidence to support the finding that the taxes were paid by the wife, and that she "paid the funeral expenses." The court's findings, as complained of, would therefore be warranted, unless, looking to the other community property devised as an entirety, the wife received more property than her one-half interest. The value of the land is not shown; but in point of acreage she received slightly less than one-half. There were six cows of the community, and she received four; there were two mules and one horse, and she got them, all the household furniture, and two turning plows and two "scuter" plows. Considering the value shown of this entire personalty mentioned, the wife did receive somewhat more than her one-half interest therein. But, in the absence of the value of the land, we cannot say from the record that the value of the personal property so received by her was greater than the lesser acreage of land set aside to her. As a consequence, we are unwilling to set aside the findings of fact by the trial court.

[3] The court on the facts of the case concluded that the wife was not estopped by an election under the will, and gave legal force to her deed to appellee. The appellant by proper assignment challenges the conclusion of the court. Finding, as the court did, that the will of Jim Payne only attempted to give his wife a life estate in slightly less than her half interest in the land, and that she was ignorant and did not know and was not informed as to her rights and had no intention to and did not elect to take under the terms of the will, this court would not be warranted, we conclude, in holding erroneous the conclusion of the trial court that election or finality of election should not be given her acts. Consent or acquiescence must have been made understandingly, sometimes even of the person's rights under the law. Watson v. Watson, 128 Mass. 152; Packard v. De Miranda, 146 S. W. 211; 2 Underhill on Wills, § 731; 1 Pomeroy, Eq. Jur. § 512.

The judgment is affirmed.