[Civ. No. 23882.   Second Dist., Div. Three.   Mar. 15, 1960.]

Estate of SADIE G. JOHNSON, Deceased. ALAN CRANS-TON, as State Controller, etc., Appellant, v. HARRY MILLER, Respondent.

James W. Hickey, Chief Inheritance Tax Attorney, Walter H. Miller, Chief Assistant Inheritance Tax Attorney, and Myron Siedorf, Assistant Inheritance Tax Attorney, for Appellant.

Berk & Bise for Respondent.

SHINN, P. J.—■■■  It is well settled that when a husband or wife makes a will which expresses a clear intention to dispose of all the estate of the testator in the belief that it is his or her separate property, and by the will leaves a portion of it to the surviving spouse, if the latter claims a community interest in the property, he or she has a choice between taking

under the will or standing upon his or her right to half of whatever is found to be community property. (*Estate of Wolfe,* 48 Cal.2d 570 [311 P.2d 476] ; *Estate of Resler,* 43 Cal.2d 726 [278 P.2d 1] ; *Estate of Emerson,* 82 Cal.App.2d 510 [186 P.2d 734] ; *Estate of Vogt,* 154 Cal. 508 [98 P. 265] ; *Estate of Moore,* 62 Cal.App. 265 [216 P. 981].) The survivor cannot take under both.

When Sadie G. Johnson died after 34 years of marriage to Albert, there stood in her name a pickup truck which Albert had been using and real and personal property of the value of $133,000. Albert had $300 in bonds. Sadie's will contained provisions as follows: "SECOND: I hereby declare that I am a married woman, that my husband's name is Albert Johnson; and that I have no children, and that all property of which I am possessed is my separate property. THIRD: I hereby give, devise and bequeath all property of which I may die possessed to the following named persons, equally, share and share alike: Albert Johnson, my husband, Reseda, California  Harry Miller, brother, Chicago, Illinois."

In the administration of Sadie's estate an inheritance tax of $3,833.87 was levied against the share of Harry Miller calculated upon the value of one-half the estate. An order fixing the tax at that amount was vacated and upon a final hearing of Miller's objections to the appraiser's report, the court sustained the objections and fixed the tax at $1,606.34, calculated upon a quarter interest in the estate. The State Controller has appealed.

In the hearing, upon evidence received, the court found that all the property was community property and concluded that Albert has a half interest in the same as his share, an additional quarter interest under the will, and Harry has a quarter.

The points urged on the appeal are (1) there was insufficient evidence to justify the finding that the property belonged to the community and (2) Albert was put to an election whether to take his share of the community property or to take under the will.

Appellant's presentation of the first point is not only inadequate but misleading. It is summed up in the statement of the opening brief: "After all, the decedent, as stated before, was 52 years old when she married Albert Johnson, she had been a business woman and had been married before. It is not unlikely that she had accumulated an estate of her own either through her business activities or on the termination of her

prior marriage or both. No evidence was presented by the respondent to negate this possibility.''

Albert had previously brought an action against the executor of the estate and Miller to quiet title to a half interest in all the property which he and Sadie owned, claiming the same to be community property. The file in that action was introduced by reference in the instant proceeding and is before us. In that action Albert gave his deposition on oral interrogatories with respect to the ownership of the property. This deposition was received in evidence in the proceeding now under review. Neither party has made any effort to have this deposition produced as a part of the record on appeal. The appellant undertakes to tell us what was not in the deposition; the respondent makes a few scanty references to the testimony of Albert. Notwithstanding the dereliction of appellant, we have caused the deposition to be transmitted to this court. It contains 61 pages. We have read it and shall summarize its contents so far as material. The only reason we do this is to point out the utter absurdity of appellant's contention that the property was shown as a matter of law to be the separate property of Sadie and the fact that counsel for appellant have become infused with the zeal of the tax collector, the like of which there is no other.

Both briefs refer to answers given by Albert to written interrogatories propounded to him in another deposition in the quiet title action. The interrogatories are in the file but not the answers. In the briefs it appears the parties are in agreement that Albert had about $300 in bonds at the time of the marriage. Appellant says there was evidence in the missing answers to the interrogatories that Sadie had $1,500; respondent says it was either $500 or $1,000. From the deposition which is before us it does not appear that Sadie produced more than $350, which she took from a bank account in which Albert had been depositing his wages. Albert was a carpenter; he worked in studios and for contractors; some years his wages amounted to $3,500. Shortly after the marriage a lot was purchased for $350; Albert built a house which they moved into and sold at a profit. They repeated this process until they had constructed and sold 25 or 30 houses. Evidently they had good credit and as their profits accumulated their operations were expanded and became more profitable. In this manner and no other, they accumulated $133,000. There is nothing whatever in the record to indicate that Sadie contributed any separate funds except perhaps some part of

the original investment of $350. At all times the property was placed in Sadie's name, purely for convenience. She would sometimes ask Albert if he wanted his name on the deeds and invariably he declined for the reason that he did not want to lose a day's work attending to details of the business. Sadie never even made a suggestion that any of the property belonged to her alone. She was unlettered and could "scribble" little more than her name. But let it be said to her credit that she knew when and under what circumstances she should obligate herself with a signature. There were 72 recorded documents which pertained to the real estate operations. There could scarcely have been more conclusive evidence of the community character of the property. ██ What Sadie believed about it when she made her will is immaterial in view of her clearly expressed intention that Albert should have a half and her brother Harry a half of everything that stood in her name. (*Estate of Moore, supra,* 62 Cal.App. 265; *Estate of Emerson, supra,* 82 Cal.App.2d 510.)

The contention of respondent that Sadie understood that Albert would take half the property as community property and that it was her purpose to give him in addition a half of her share is without support in logical inference, reason or authority. The will can only be construed as an attempt to dispose of the entire property. It is crystal clear that her purpose would be defeated if three-fourths of the estate should go to Albert and only one-fourth to Harry. Respondent has advanced no plausible reason for the failure of the trial court to apply the rule which we stated at the commencement of the opinion. It clearly is controlling under the terms of the will and the finding that all the property belonged to the community.

The judgment is reversed and the court is directed to vacate the order appealed from and make a new order fixing the inheritance tax of Harry Miller's share in accordance with the views above expressed.

Vallée, J., and Ford, J., concurred.