425 P.2d 813

Ray REED, William H. Reed, and Opal A. Reed Witt, Plaintiffs-Appellees,

v.

Freeman M. NEVINS, if living, if deceased, the unknown heirs of Freeman M. Nevins, deceased, Mary L. Glenn, if living, if deceased, the unknown heirs of Mary L. Glenn, deceased, and all unknown claimants of interest in the premises adverse to the plaintiffs, Defendants-Appellants.

No. 8101.

Supreme Court of New Mexico.

April 3, 1967.

Smith, Smith & Tharp, Clovis, for appellants.

Dan B. Buzzard, Clovis, for appellees.

## OPINION

WOOD, Judge, Court of Appeals.

Six questions require an answer in this dispute over title to real property. They are: (1) What interest was devised by the husband's will? (2) Is the doctrine of election applicable? (3) Did the widow relinquish her interest in the property? (4) Was there a tenancy in common? (5) What is the effect of the tax deed? (6) Under our adverse possession statute, was there color of title in good faith?

The trial court found that the real estate here involved was the community property of William M. Nevins and Leila M. Nevins, who were husband and wife. This finding is not attacked and is a fact upon which the appeal rests. J. A. Silversmith, Inc. v. Marchiondo, 75 N.M. 290, 404 P.2d 122.

William M. Nevins died in 1930. His will left the property to the plaintiffs. The 1933 taxes were not paid. In 1934 Mrs. Nevins purchased a tax sale certificate and in 1937 she acquired a tax deed to the property. From 1937 until her death in 1963 she paid the taxes on the property and received the rental income.

Plaintiffs instituted an action to quiet their title to the entire tract. They claimed that the entire tract was left to them by the will of William M. Nevins.

Defendants, who are heirs of Mrs. Nevins, cross-claimed to quiet their title to the entire tract. Defendants claim that title to the entire tract went to the plaintiffs, either by the will or by Mrs. Nevins relinquishing her interest in the property. They claim that Mrs. Nevins subsequently acquired title in herself, either by tax deed or by adverse possession.

The trial court determined that plaintiffs own an undivided one-half interest in the property. Defendants appeal from that judgment.

The property being community, a one-half interest was vested in the wife, Leila M. Nevins. In re Stutzman's Estate,

57 N.M. 710, 262 P.2d 990. Only Mr. Nevins' one-half interest was subject to his testamentary disposition. Section 29-1-9, N.M.S.A.1953. Since his wife survived him, Mr. Nevins was "powerless to affect [his] wife's interest." In re Chavez's Estate, 34 N.M. 258, 280 P. 241, 69 A.L.R. 769. The will did not deprive Mrs. Nevins of her interest in the property.

Was she deprived of her interest by the doctrine of election? 60 A.L.R.2d 738 states:

"One who receives a benefit under a will ordinarily must, if the will purports to dispose of a property or right to which the beneficiary asserts an independent claim, elect whether to take under or against the will, taking either the testamentary gift or his own independent interest, but not both.

"It is obvious that before any such election can be required, it is necessary to determine whether the will does in fact purport to dispose of a property or right belonging to a beneficiary thereunder, * * *"

The probate proceedings show that Mrs. Nevins received a benefit under the will and that she desired to take under the will. Still, if the will did not purport to dispose of her interest, the doctrine of election is not applicable.

The will does not express an intention to dispose of Mrs. Nevins' community interest in the property. Compare Owens v. Andrews, 17 N.M. 597, 131 P. 1004, 49 L.R. A.,N.S., 1072; and In re Gallagher's Will, 57 N.M. 112, 255 P.2d 317, 37 A.L.R.2d 149. All the will states is that the property went to the plaintiffs.

In such a situation, courts generally recognize a policy favoring a construction "against any attempt to dispose of the property of another." 60 A.L.R.2d 739. In community property situations:

"* * * [T]he courts have given effect to the ordinary rule that testamentary dispositions will be construed, where possible, as referring to the testator's own partial interest in the property, and have refused to require an election." 60 A.L.R.2d 763.

The above quotation resolves the question on the basis that it is *possible* to construe the will as devising only the testator's partial interest in the property. Other cases take a different approach and hold that unless the intent to devise the wife's community interest is shown by clear and unequivocal language in the will, there is no devise of the wife's community interest. In this approach, it is not sufficient that the will may be construed as intending to dispose of the wife's interest; rather, it is necessary that the will be subject to no other construction. Commissioner of Internal Revenue v. Chase Manhattan Bank, 259 F.2d 231 (5th Cir. 1958); Davis v. East Texas Savings &

Loan Association, 163 Tex. 361, 354 S. W.2d 926 (1962); Millikin Trust Co. v. Jarvis, 34 Ill.App.2d 180, 180 N.E.2d 759 (1962).

We hold that the husband's will must disclose a clear and unequivocal intent to dispose of the wife's community property interest. Here, no such intention is expressed in the will. The testamentary disposition referred only to Mr. Nevins' interest in the property. The doctrine of election is not applicable. The trial court correctly found that the will devised only Mr. Nevins' interest in the property.

Did Mrs. Nevins relinquish her interest in the property? In considering the question it must be borne in mind that her interest was a community property interest —it was acquired on the basis of the marital relation. In construing a contract by which it was sought to deprive a wife of property rights growing out of the marital relation, it was held that the contract must show a clear and unmistakable intention to barter the rights away. Girard v. Girard, 29 N.M. 189, 221 P. 801, 35 A.L.R. 1493. The principle is applicable here.

The evidence bearing on the question of relinquishment is that (1) Mrs. Nevins desired to take under the will (2) as executrix she included the property in the inventory and (3) in her final report she declared that the property had passed to the devisees under the will. This evidence is ambiguous; it could refer either to the entire interest in the property or to the interest devised by the will. It fails to show a clear and unmistakable intention by Mrs. Nevins to relinquish her interest in the property.

Mrs. Nevins retained her undivided one-half interest in the property. Plaintiffs acquired an undivided one-half interest under the will. They were tenants in common. 86 C.J.S. Tenancy in Common § 9, and cases therein cited.

Defendants attack the finding of tenancy in common. They assert that the claim of the parties were adverse, therefore no unity of possession, therefore no tenancy in common. They rely on Neher v. Armijo, 9 N. M. 325, 54 P. 236; Wallace v. McPherson, 187 Tenn. 333, 214 S.W.2d 50; and McKinney v. Beattie, 157 Ark. 356, 248 S.W. 280. Each of these cases involved a claim of adverse possession. Where the claim of. adverse possession was established, there was no co-tenancy. These cases are not applicable—they apply to the destruction of the co-tenancy by adverse possession and not to the inception of the co-tenancy.

At this point we are concerned with the relationship of the parties resulting from the devise under the will. Mr. Nevins devised his one-half interest to plaintiffs. That devise resulted in them being tenants in common with Mrs. Nevins.

Was the tenancy in common destroyed either by the tax deed or by adverse possession?

At the time Mrs. Nevins purchased the tax sale certificate she was a tenant in common with the plaintiffs. The purchase was a payment of the taxes and a redemption of the property by one charged with the duty to pay taxes. The payment and redemption inured to the benefit of plaintiffs. Smith v. Borradaile, 30 N.M. 62, 227 P. 602; Torrez v. Brady, 37 N.M. 105, 19 P.2d 183, and Apodaca v. Hernandez, 61 N.M. 449, 302 P.2d 177. The tax deed also inured to their benefit. Velasquez v. Mascarenas, 71 N.M. 133, 376 P.2d 311.

The tenancy in common was not destroyed by the tax deed. Garcia v. Sanchez, 64 N.M. 114, 325 P.2d 289, relied on by defendants is not to the contrary. There, the adverse claimant repudiated the title of his tenants in common after acquiring a tax deed. The adverse possession stemmed from this repudiation, not the tax deed.

For Mrs. Nevins to have established title by adverse possession, her possession must have been in good faith under color of title. Section 23–1–22, N.M.S.A. 1953. The tax deed was color of title. Turner v. Sanchez, 50 N.M. 15, 168 P.2d 96, 164 A.L.R. 1280; Heron v. Garcia, 52 N.M. 389, 199 P.2d 1003. But was the tax deed color of title in good faith?

All co-tenants have the duty to pay the tax due on the land. Haden v. Eaves, 55 N.M. 40, 226 P.2d 457. As a tenant in common, Mrs. Nevins was under such a duty. She did not pay the 1933 taxes when they were due. Later she purchased the tax sale certificate. Purchase of the tax sale certificate was a payment of the taxes and a redemption of the property on behalf of all the tenants in common. The tax deed inured to the benefit of all the tenants in common.

Defendants' claim of good faith is dependent on the acts of Mrs. Nevins. These acts were a delayed performance of her duty to pay taxes and a redemption of the property on behalf of all the tenants in common, including the plaintiffs. Such acts show that color of title under the tax deed was not a good faith claim adverse to the plaintiffs. Apodaca v. Hernandez, supra; Palmer v. Denver & Rio Grande Western R. R., 75 N.M. 737, 410 P.2d 956.

Absent color of title in good faith, our adverse possession statute is not applicable, and it is not necessary to determine whether the possession of Mrs. Nevins was adverse to the plaintiffs.

The judgment is affirmed.

It is so ordered.

CHAVEZ, C. J., and CARMODY, J., concur.

MOISE, Justice (dissenting).

Although I agree with the law announced by the court to the effect that, where possible, wills should be construed not to intend disposition of property not owned by the testator, I question the application of the rule made in this case.

The property involved is the Northwest quarter of Section 25, Township 3 North, Range 32 East, N.M.P.M. It was found to be community property and, accordingly, the wife had a vested one-half interest therein. Beals v. Ares, 25 N.M. 459, 185 P. 780 (1919). The husband's testamentary capacity is limited to his one-half. § 29-1-9, N.M.S.A.1953; In re Chavez's Estate, 34 N.M. 258, 280 P. 241, 69 A.L.R. 769 (1929). We must here determine if decedent was attempting to devise only his one-half interest in the property, or the entire property, when he provided in his will, as follows:

"To my daughter, Mary J. Glen, the west half of the northwest quarter of Section twenty-five in Township three north of Range thirty-two east of the New Mexico Meridian, New Mexico, including the improvements thereon.

"To my daughter, Dovy Reed, heirs being three children now living, the east half of the northwest quarter of Section twenty-five in Township three north of Range thirty-two east of the New Mexico Meridian, New Mexico, including the improvements thereon."

By another provision in the will the testator devised a particular 320-acre tract of land to his wife "including the house and all other appurtenances therein belonging or anywise appertaining thereto and all other useful and ornamental personal property which shall be therein contained at the time of my demise. I also give and bequeath to her all my personal property and money * * *." In the clause devising the residual estate is found the following language: "All of the rest of my estate, both real and personal, not heretofore mentioned, I give and bequeath to my wife, * * *."

How can it be said that the language in the two paragraphs quoted above expressed anything other than an intention to devise the quarter section? There is not one word to indicate otherwise. Under the circumstances, there is no basis for implying an intention not to include the entire property. The situation is entirely different from that which results when a devise is made of "all my lands" or "my property" where a construction against something being devised which was not owned is clearly indicated. The rule is stated thus in 2 Pomeroy, Equity Jurisprudence (5th Ed.) § 489:

"If a testator owning an undivided share uses language of description and donation which may apply to and include the whole property, and by the same will gives benefits to his co-owner, the question arises whether such co-owner is

bound to elect between the benefits conferred by the will and his own share of the property. *Prima facie* a testator is presumed to have intended to bequeath that alone which he owned,—that only over which his power of disposal extended. Wherever, therefore, the testator does not give the whole property *specifically*, but employs *general words* of description and donation, such as 'all my lands,' and the like, it is well settled that no case for an election arises, because there is an interest belonging to the testator to which the disposing language can apply, and the *prima facie* presumption as to his intent will control. On the other hand, if the testator devises the property *specifically* by language indicating a specific gift of the property, an election becomes necessary. It seems now to be settled by the more recent English decisions that when the owner of an undivided share devises or bequeaths the property by words of description and donation importing an intent to give the entirety, then a case of election is raised against the other co-owner who receives a benefit under the same will. The conclusion which is plainly deducible from these recent decisions in England is, that when a person owns an undivided interest or share in any species of property,—a house and lot, a farm, a fund of securities, or a fund of money,—and he does not use general words of gift, such as 'all my estate,' 'all my property,'

and the like, but purports to give the *whole thing itself,* using language which, by a reasonable interpretation, must necessarily describe and define the whole *corpus* of the thing in which his partial interest exists, as a distinct and identified piece of property, then an intention to bestow the whole, and not merely the testator's undivided share, must be inferred, and a case for an election arises. The language of description may be by metes and bounds, or may be any other form of words which will serve clearly to point out and identify the entire subject-matter."

In the gifts to his wife of the personal property, money and residue of the estate, reference is made to "*my* personal property and money" and "rest of *my* estate." As to that property, the testator employed general, as opposed to specific, words of description, so that as to it the prima facie presumption of intention to bequeath that alone which he owned is applicable. Just as certainly, the gifts of the east half of the northwest quarter and of the west half of the northwest quarter leave no room for reading into the language used an intention to devise only the undivided one-half community interest of the testator. The specific language used in making these devises requires a construction, by any reasonable interpretation, not only of the words themselves but from the four corners of the whole testamentary instrument, that the

testator intended to devise the whole of those lands, as distinct and identified tracts, not merely his undivided interest therein. The presumption of intention indulged by the majority, to devise only the interest he had, does not apply where such specific language is employed.

Without quoting from cases supporting the conclusion reached, contrary to that of the majority, attention is directed to the following cases which support the position here advanced: In re Estate of Orwitz, 229 Cal.App.2d 767, 40 Cal.Rptr. 545 (1964); In re Johnson's Estate, 178 Cal.App.2d 826, 3 Cal.Rptr. 408 (1960); In re Moore's Estate, 62 Cal.App. 265, 216 P. 981 (1923); In re Vogt's Estate, 154 Cal. 508, 98 P. 265 (1908); Hodge v. Ellis, 154 Tex. 341, 277 S.W.2d 900 (1955); Wright v. Wright, 154 Tex. 138, 274 S.W.2d 670 (1955); Cheatham v. Mann (Tex.Civ.App.1939) 133 S.W.2d 264; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (1935); Payne v. Farley (Tex.Civ.App.1915) 178 S.W. 793; Rogers v. Trevathan, 67 Tex. 406, 3 S.W. 569 (1887). See, also, cases in 60 A.L.R.2d 736, 769; 171 A.L.R. 649, 664; 68 A.L.R. 507, 517; 22 A.L.R. 437, 517.

Unquestionably, the widow, having been put to an election (See 2 Pomeroy, Equity Jurisprudence (5th Ed.) §§ 505 and 506 (a) ), here took under the will. The one hundred sixty acres of land devised in the two paragraphs set out above passed to the devisees therein named. Mrs. Nevins

was not a co-tenant. There was nothing which in any way interfered with her acquiring tax title to the property, or which prevented her from claiming adversely. This she did, and held the property for some twenty-seven years as her own under color of title, paying the taxes and enjoying the full return from the property. At this late date I can see no reason to upset the interests long established and supported in law. In my view, the case should be reversed. Inasmuch as the majority has concluded otherwise, I dissent.

NOBLE, J., concurs.