## Diehl *v.* Keystone Alloys Company, Appellant.

150

Argued November 17, 1958. Before Rhodes, P. J., Hirt, Gunther, Wright, Ervin, and Watkins, JJ. (Woodside, J., absent).

*H. Reginald Belden,* with him *H. A. Stewart,* for appellant.

*Joseph M. Loughran,* for appellee.

OPINION BY GUNTHER, J., March 18, 1959:

These appeals involve a workmen's compensation case in which the Court of Common Pleas of Westmoreland County awarded compensation to the widow and children of the deceased, Russell P. Diehl. The case is before us on appeals by Keystone Alloys Company from the decree and amended decree entered in which the findings and conclusions of the board were reversed.

Russell P. Diehl was killed in an accident in Palmer, Alaska, on September 9, 1954, while hauling storm doors and windows to an Air Force base in Anchorage, Alaska. For some years prior to his death, he had been in the trucking and hauling business as a contract hauler. Diehl owned numerous trucks which he leased to various firms, including appellant, Keystone Alloys Company. The lease arrangement between Diehl and appellant was entered into on August 1, 1953 and provided for the payment of 17 cents per mile per vehicle actually used by appellant in hauling its products. The agreement also provided that appellant had the right to select the drivers for such vehicles and to control and direct the operation of said vehicles.

The claimant, Mrs. Shirley Diehl, testified that her husband was self-employed and had never driven for anyone during the time she was married to him. She further stated that under the contract above referred to, her husband had never been on the payroll of the appellant as an employe and that he paid his own self-employment tax under social security coverage. However, she testified and contended that her husband had been hired by appellant as a driver to drive one of his own trucks to Alaska on or about August 25, 1954, and that while so employed, he was killed.

The evidence on behalf of appellant disclosed that, as a manufacturer of storm doors and windows, it had

a distributor, Jack Zappone, trading as Zappone Industries in Spokane, Washington, who distributed its products in the western part of the United States. Some time prior to September 9, 1954, Zappone Industries secured an order from the United States Government for 2700 aluminum storm windows which were manufactured and sold to Zappone Industries by appellant. The shipment was f.o.b. at the plant in Derry, Pennsylvania. Jack Zappone came to Greensburg, Pennsylvania, for the purpose of arranging for transportation of the storm windows to Alaska and it was during this visit that Diehl was introduced to Jack Zappone by the president of appellant company. Previously, Diehl had indicated a desire to handle this shipment and to drive one of the trucks himself. An agreement was entered into between Diehl and Jack Zappone under which Diehl agreed to transport the storm windows to Alaska, using two trucks, for which Diehl was to receive 25 cents per mile on an agreed round trip of 9,000 miles per truck.

The windows were loaded partially in a truck driven by Steve Selembo, who departed approximately 10 days before decedent started with the second load. Selembo had been a driver supplied by Diehl to operate his trucks for Keystone Alloys Company and was on the payroll of appellant for some time previously, although he had driven for other firms to whom Diehl had leased his trucks and had been on the payroll of such other concerns. The route was selected by Diehl. When Diehl departed with the second truck, he stopped in Wisconsin to pick up his brother-in-law, Howard Cloute, who accompanied him on the trip to Alaska. This was without the knowledge or consent of appellant. While Cloute was driving on the Alcan Highway about 100 miles south of Anchorage, Alaska, the truck went over an embankment and Diehl was accidentally killed.

The referee, after several hearings, awarded compensation to the claimant. Appellant appealed from this award to the board and the board sustained the appeal and disallowed compensation on the ground that at the time of his death, Diehl was an independent contractor and not an employe of Keystone Alloys Company. From the board's findings of fact and conclusions of law, an appeal was filed to the Court of Common Pleas of Westmoreland County, which, on March 6, 1958, reversed the board and reinstated the award of the referee. An appeal was filed from this adjudication and ten days after the appeal was filed, the court below amended its decree, revising the judgment entered against appellant. An appeal was also taken from this amended decree.

The decree first entered by the court below merely reversed the award of the board and reinstated the award of the referee without fixing the compensation payable as required under the Workmen's Compensation Act, 77 P.S. section 878. In its amended decree, this inadvertence was corrected. It is a well established rule that after an appeal has been taken to an appellate court, the court below has no power to proceed further with the case. *Kingsdorf v. Frank Gamburg, Inc.*, 147 Pa. Superior Ct. 84, 24 A. 2d 140; *Harwood v. Bruhn*, 313 Pa. 337, 170 A. 144. However, such a rule does not preclude the right of the court, having made an inadvertent or erroneous order, to correct it, notwithstanding the filing of an appeal so long as the record still remains in the court below. Since the record of this case had not been transmitted to this Court when the amended decree was entered, we fail to see how the appellant was harmed by the correction of an error which was discovered before the record was transmitted to us.

The real and only other question presented on this appeal is a determination of whether the deceased was

an employe of appellant or an independent contractor and whether, in the determination of this issue, the findings of the compensation authorities are supported by substantial and competent testimony. It is well settled that the findings of fact by the compensation authorities, if supported by the evidence, are binding upon the courts. *Oliver v. Westinghouse Electric Corporation*, 186 Pa. Superior Ct. 604, 142 A. 2d 486; *Spina v. Gahagan Construction Corp.*, 184 Pa. Superior Ct. 420, 135 A. 2d 760. It is our duty to view the evidence in the light most favorable to the party in whose favor the board found, giving that party the benefit of every inference which can be logically and reasonably drawn from it. *Curran v. Walter E. Knipe & Sons, Inc. et al.*, 185 Pa. Superior Ct. 540, 138 A. 2d 251; *Litman v. Litman*, 185 Pa. Superior Ct. 69, 137 A. 2d 918.

The evidence produced on behalf of the claimant consisted of her own statements showing an employer-employe relationship. However such statements to show the relationship were based upon hearsay and clearly not admissible. *Smith v. Philadelphia and Reading Coal and Iron Co.*, 284 Pa. 35, 130 A. 265; *Burrell v. State Workmen's Insurance Fund et al.*, 127 Pa. Superior Ct. 510, 193 A. 439.

Claimant also relied upon the lease agreement entered into between deceased and appellant to establish an employer-employe relationship. However, this contract, apparently drawn to comply with the requirements of the Interstate Commerce Commission relative to the leasing of equipment, could not shed any light upon the relationship of the parties in view of the positive statements of the claimant herself that up to the trip in which her husband was killed, deceased was not an employe of appellant but an independent contractor and that the trip involved was the only trip ever made by deceased for the appellant. The categorical state-

ment of claimant was to the effect that the deceased was never on the payroll of appellant, but, on the contrary, he filed his social security returns as a self-employed individual. While no provision was made for the deduction of social security or income tax deductions it would not, of itself determine the status of an alleged employe (see *Stevens v. Publishers Agency,* 170 Pa. Superior Ct. 385, 85 A. 2d 696; *Eggelton v. Leete,* 186 Pa. Superior Ct. 542, 142 A. 2d 777) this fact, coupled with the testimony of claimant negates the relationship of an employe. Nor is the designation given by an alleged employer conclusive to determine a status. *Eggelton v. Leete,* supra.

The only basis upon which an employer-employe relationship could be predicated was the trip itself in the performance of which the claimant's husband was killed. The evidence disclosed, however, that this isolated transaction was based upon a separate contract which was entered into between the deceased and a representative of Zappone Industries which had no connection with appellant. The terms of this verbal agreement clearly disclosed the relationship of an independent contractor. The introduction of this evidence, when offered by the president of the appellant company, was not objected to, but when corroborated by another witness, it was objected to on the ground that such testimony was incompetent under the Act of 1887, since Diehl's lips were sealed. We believe this testimony was competent. The agreement testified to by the two witnesses did not relate to the provisions of a contract between appellant and the deceased but related to an agreement between the deceased and a third party to which appellant's witnesses were not parties. The Act of 1887 does not preclude such testimony.

The record discloses that appellant made certain advances to deceased before the trip was undertaken.

Prior to the departure of Selembo, an advance of $2000.00 was made by appellant to deceased. When deceased was about to depart, an additional $2000.00 was advanced to him. Sometime later, upon a request from Selembo, the sum of $500.00 was telegraphed to him for the purchase of tires en route and the sum of $600.00 was sent to the deceased en route by Western Union. Of these advances, together with $1000.00 paid to Selembo for wages, the sum of $5500.00 was reimbursed to appellant by Zappone Industries. It therefore clearly appears that the expenses of the trip were paid by Zappone Industries and not by appellant.

We have carefully reviewed the competent evidence and conclude that the testimony, considered in its entirety, supports the finding and conclusion of the board that the deceased was an independent contractor and not an employe of appellant.

The judgment of the court below is reversed.