444 P.2d 589

**Ed FOREMAN and Roy Foreman, Partners, d/b/a Valley Transit Mix, Atlas Land Co., Plaintiffs-Appellants,**

**v.**

**Robert F. MYERS, Defendant-Appellee.**

**Robert F. MYERS and Catherine D. Myers, husband and wife, and Farmers & Merchants Bank, Counter-Plaintiffs-Appellees,**

**v.**

**Ed FOREMAN and Roy Foreman, Individually and as Partners, d/b/a Valley Transit Mix, Atlas Land Co., Barbara S. Foreman and Allene W. Foreman, Counter-Defendants-Appellants.**

No. 8590.

Supreme Court of New Mexico.

Aug. 26, 1968.

Garland, Martin & Martin, Darden & Mechem, Las Cruces, for plaintiffs-appellants.

Sutin & Jones, Albuquerque, for defendants-appellees.

## OPINION

CARMODY, Justice.

Plaintiffs sued to enjoin the defendants from violation of a covenant not to compete, which was a part of a contract to purchase a business. A counterclaim was filed, which sought to accelerate the balance due on certain promissory notes given pursuant to the agreement. The trial court dismissed the complaint and entered a decree in favor of the defendants on the counterclaim, from which this appeal follows.

The parties will be referred to in the singular as "Foreman" and as "Myers," even though the Foremans were the plaintiffs and counter-defendants and the Myerses were defendants and counter-plaintiffs.

A contract was entered into between the parties on June 30, 1965, in which Foreman agreed to purchase the stock of Valley Transit Mix, Inc. and Atlas Land Co. from Myers and others. Foreman's complaint alleged that Myers acted as a financial sponsor for a competing firm in violation of the agreement, thereby causing irreparable harm. At the time of filing suit, Foreman acknowledged that $1,244.75 was due monthly on a promissory note, and this amount was deposited with the clerk of the district court, as were the subsequent monthly payments during the pendency of the action, although all without the sanction of the court. Meyers' counterclaim alleged the making of a promissory note for the balance owing on his 25% interest in the stock of the two corporations in the sum of $147,500.00, with interest at 6%, and declared that the note was in default, there having been no payment received after June 15, 1966. Meyers thereby sought to mature his security agreements in the amount of $142,311.82, with interest from July 15th, together with attorney's fees.

Following trial, the court rendered its decision, consisting of its findings and conclusions, on October 19, 1967. On October 31st, Meyers filed a motion, seeking to have the funds in custody of the clerk paid to him. The following day, Foreman, through newly-employed counsel, in addition to the attorneys who represented him at the trial, moved to reopen the case for a further hearing. This motion alleged that Foreman would be compelled to sell practically all real and personal property owned by them at a forced sale, and that, in all probability, only Myers would bid it in and that, therefore, a deficiency judgment would issue, unjustly enriching Myers. The motion also alleged that Foreman had acted in good faith in depositing with the clerk of the district court the monthly payments due. This motion was denied on November 7th, the court stating, " * * * to withhold the enforcement of the foreclosure order, would be tantamount to this court's destroying the security Mr. Myers had for the sale of the property, and would be tantamount to this court's changing the contract of the parties."

Also on November 7th, a stipulation and two orders were filed which related to the funds deposited with the clerk. Following the entry of judgment and the taking of the appeal, Myers filed a motion for diminution of the record, seeking to strike the stipulation and one of the orders filed on November 7th. It seems that in February of 1967, Myers' attorneys sent Foreman's attorneys a stipulation and proposed order for disbursement of the funds which Foreman had deposited with the clerk of the court, and seeking to have future payments during the pendency of the litigation paid directly to Myers. Foreman refused to so agree, but the proposed stipulation (signed by Myers' attorney) and order were retained in the office file of Foreman's counsel. After the court rendered its decision but before judgment, and following Myers' motion of October 31st above mentioned, a different order was sent to the trial judge authorizing the disbursement of the funds, this order having been presented to trial counsel. At about the same time, the February stipulation, now signed by the newly-employed counsel, was sent to the trial judge, together with the order directing the disbursement of the funds. As stated, both of the orders were signed and, together with the stipulation, filed on November 7th.

There can be but one explanation for the confusion, this being that the trial judge was a non-resident designee judge living in Carlsbad, whereas counsel for Foreman were in Las Cruces and for Myers in Albuquerque. Thus both orders were seemingly proper, having been approved by counsel, and were therefore signed by the judge without full recognition that they were conflicting, although accomplishing the same general purpose, i. e., authorizing payment of the funds to Myers. This is so because the order based on the stipulation *signified agreement of the parties* as to payments made and to be made during pendency of the litigation, whereas the other *was compulsive* in conformity with the court's decision, although prior to judgment. In any event, when the transcript

of the record was received by Myers on December 18th, there was immediately filed a motion for diminution of the record to strike from the record the stipulation and the order entered in conformity therewith, on the ground that they had been inadvertently filed. The trial court, on December 29th, ordered the diminution as requested.

Foreman urges four points for reversal, three of which are interrelated, having to do with the trial court's conclusion that Foreman was in default and that the payments on the note should be accelerated.

Briefly, the first three points are: (1) That equity should not permit acceleration where payments have been made to the clerk of the court, the payee's security being unimpaired. With respect to this point, Foreman challenges two of the findings made by the trial court, one of which was that Foreman failed to make the July 15th and subsequent payments on the note to Myers, although payments had been made to the clerk, and that Foreman was in default on the note and all conditions precedent had been performed. (2) That it was an abuse of discretion to refuse to reopen the case to allow the showing of inequities which would result from acceleration; and (3) that the appeal to the supreme court divested the district court of jurisdiction to make its order of diminution.

With respect to the two findings that are claimed to be attacked, it really cannot be seriously contended that they are without support in the evidence. Actually, Foreman's response to the counterclaim admitted that the last payment made to Myers was on June 15, 1966, "except that payments for the months of July, August and September of 1966 have been deposited with the clerk of the district court of Dona Ana County. * * *" It is thus apparent that the monthly payments obviously were not made to Myers as required by contract. Therefore, we are left with Foreman's contention that we should, on equitable grounds, reverse the trial court.

The legal questions presented are (1) whether a deposit with the clerk of the

court, without court authority, was sufficient to prevent acceleration; (2) whether notice, other than the bringing of suit (the counterclaim), was necessary to acceleration; (3) whether acceleration is a forfeiture; (4) if diminution of the record is proper after appeal has been taken; and (5) whether it was an abuse of discretion to deny a reopening of the case.

At the trial, no evidence was offered or admitted with respect to any reason why the monthly payments were made to the clerk of the district court without tender to Myers, approval of the court, or refusal to consent that the same be paid over to Myers; or to the possible inequities in the event of acceleration. It is also noteworthy that Foreman requested no findings with regard to either of the above matters prior to the decision of the court. Thus, in essence, the claim for equitable relief is predicated upon events occurring *after* the trial, not before.

■ On appeal, Foreman urges that the payment to the clerk of the court was intended to avoid acceleration and was a mistake of law which will be corrected by a court of equity. The fact is, we are here being called upon by Foreman to grant equitable relief under circumstances where it is somewhat difficult to determine whether "he who seeks equity has done equity." It is clear from the record that at no time was tender or payment made to Myers. Actually, Foreman refused in February to allow the money which had been paid in to be paid over to Myers. In any event, to be valid, tender must be made to the creditor, Fletcher v. Bryan, 76 N.M. 221, 413 P.2d 885 (1966). Both the rule and the statute contemplate that payments into court be made under order of the court. See, §§ 21-1-1(67) and 21-4-4, N.M.S.A. 1953. Even when ordered by the court, payment to the clerk simply operates to keep a good tender alive; it cannot make a bad tender good. Moise v. Timm, 33 N.M. 166, 262 P. 535 (1927). Nor is payment to someone other than the creditor effective. Hanna v. McCrory, 19 N.M. 183, 141 P.

996 (1914). In any event, there having been no valid tender or payment to the creditor, and no evidence to support a contrary finding, the trial court was correct in concluding that Foreman was in default. The trial court had before it all of the circumstances that are present before us, and we cannot but feel that that court, just as we, was cognizant of Foreman's refusal to consent to the disbursement of the funds many months before the trial. It should be apparent to all that the deposit of the funds with the clerk, as was done here, was but a "halfway" attempt to comply with the contract—Foreman could contend that he had put the money out of his grasp (although even this is not without some doubt), but, by the same token, for some fifteen months Myers was prevented from utilizing the funds to which he was legally entitled.

Considering all of the circumstances, we are not persuaded that we should grant equitable relief. This was not a mistake of law—it was a unilateral attempt to alter the terms of the contract.

■ On the question of acceleration, we would but note our holding in Carmichael v. Rice, 49 N.M. 114, 158 P.2d 290; 159 A.L.R. 1072 (1945), wherein we indicated that the bringing of suit is sufficient notice that an option to accelerate is being exercised. See, also, Annot., 5 A.L.R.2d 968, 975 (1949). It is well settled that forfeiture and acceleration are entirely different. An acceleration clause will be enforced in both law and equity. Cf., Carmichael v. Rice, supra; and see, generally, 2 Pomeroy's Equity Jurisprudence 216, § 439 (5th ed. 1941). Although Foreman attempts to claim that this proceeding amounts to a forfeiture, it is apparent to us that it is merely an acceleration of the contract in accordance with the agreement of the parties. We find no merit in the claim here urged.

■ Proceeding, then, to the order of diminution of the record, Foreman relies on National American Life Insurance Co. v. Baxter, 73 N.M. 94, 385 P.2d 956 (1963);

and State v. White, 71 N.M. 342, 378 P.2d 379 (1962), claiming that jurisdiction of the trial court is lost when an appeal is taken, except for purposes of passing upon motions pending at the time. As stated, the motion for diminution was made after appeal was taken; however, our rules provide for a continuing jurisdiction in the trial court for some purposes, and this includes perfecting an appeal to this court. The effect of the order here entered was merely to correct or perfect the record, and is fully consistent with the power of the trial court relating to the perfection of the appeal. Actually, it is specifically contemplated by the rules. See, § 21–2–1(14) (13), N.M.S.A.1953, which reads as follows:

> "When an appeal or writ of error has been granted, the trial court shall retain jurisdiction of the cause *for the purpose of hearing motions suggesting a diminution or correction of the record* of the trial court, and of acting thereon." (Emphasis added.)

Cf., Diehl v. Keystone Alloys Co., 189 Pa. Super. 149, 149 A.2d 479 (1959), rev'd on other grounds 398 Pa. 56, 156 A.2d 818 (1959); Johnson v. Bryars, 264 Ala. 243, 86 So.2d 371 (1956); and Torrance v. City National Bank of Rockford, 32 Ill.App.2d 288, 177 N.E.2d 646 (1961). None of the cases relied upon by Foreman involved acts in furtherance of perfecting the appeal, thus are not in conflict with our ruling here.

In the event Foreman is not, strictly speaking, objecting to the diminution but only to the findings made by the trial court in its order, it may very well be that the rule does not contemplate findings by the trial court in ruling on a motion for diminution. Nevertheless, the complete record is before us, and both parties are in agreement that it speaks for itself. With this we also agree. Therefore, disregarding the findings made by the trial court, it is obvious that Foreman, during the pendency of the action, refused to permit the funds in the hands of the clerk to be paid to Myers, and that the signing and filing of the order carrying out the agreements contained in the stipulation were inadvertent. Under such circumstances, the tardy approval of the stipulation does nothing to enhance Foreman's equitable contention.

■ With reference to the claimed abuse by the trial court in refusing to reopen the case, we would point out that we have consistently held that such a determination is within the sound discretion of the trial court and will not be lightly overturned. Riggs Motor Co. v. Gardikas, 78 N.M. 5, 427 P.2d 890 (1967); Coastal Plains Oil Company v. Douglas, 69 N.M. 68, 364 P.2d 131 (1961); and Latta v. Harvey, 67 N.M. 72, 352 P.2d 649 (1960). The reasons given by the trial court, quoted in the early part of this opinion, were well considered, and, other than for our normal sympathy in apparent hardship cases, we see no reason in overturning the ruling of the trial judge. The default being undisputed, we will not hold the trial court to have abused its discretion in upholding the rights bargained for by the parties. Cf., United States v. Sylacauga Properties, Inc., 323 F.2d 487 (5th Cir. 1963).

Further consideration of the first three claims of error is not justified.

The final argument seeking reversal relates to the merits of the litigation itself. The contract between the parties provided the following:

> "V (a) The sellers agree that neither one of them will either directly or indirectly, either as principal, agent, financial sponsor, owner, or employee, enter into concrete batch plant, concrete transit mix, sand, gravel or similar business or any directly related business competitive with purchasers within the geographical limits of Dona Ana County, New Mexico, for a period of 15 years. * * *

> "IX (b) That the restrictions against competition referred to in Paragraph V (a) do not preclude the sellers or either of them from engaging in the business of selling, leasing, renting, and dealing in

the type of equipment that is used in the sand and gravel business."

It was upon the above covenants that the complaint was based. We see no necessity in reviewing the testimony, because the only issue is the effect of a lease agreement between Myers and one Muncrief.

The trial court's finding No. 7 is as follows:

"7. On October 27, 1965, Robert F. Myers entered into a lease agreement of equipment of the type used in the sand and gravel business with Wayne Muncrief and Winston Muncrief, d/b/a Certified Sand Company, a partnership. Myers purchased the equipment and leased it to Certified Sand Company. This agreement was a bona fide, arms length transaction, entered into in good faith, and it complied with the restrictive covenant in paragraph V(a) and the exception thereto in paragraph IX(b). Part of the leased equipment was actually purchased by Muncrief with money furnished by Myers. All was pursuant to an oral lease agreement which was later reduced to writing. (Exhibit D–11)."

Although Foreman states that he is attacking this finding, it seems that the claim of error is that the one solitary act of leasing did not constitute engaging in business, and that, coupled with the facts present, it was rather financial sponsorship, as specifically prohibited. However, we cannot consider finding No. 7 in a vacuum, and the same must be read in connection with the other findings, particularly finding No. 8, which appears as follows:

"8. Apart from this lease agreement, Robert F. Myers has had no business relationship, direct or indirect, with Certified Sand Company. Neither has he, directly or indirectly, either as principal, agent, financial sponsor, owner or employee, entered into any concrete batch plant business, concrete transit mix business, sand, gravel or similar business, or directly related business that is competitive with the Foremans."

This finding is nowhere attacked in Foreman's brief, although, in fairness, we take note of the fact that, in the summary of the findings appearing in the brief in chief, it is stated that this finding is to be challenged. However, thereafter it is never mentioned, and it is only finding No. 7 that seems to be seriously controverted. In this context, we do not consider that finding No. 8 is attacked, and it is therefore a fact before us. Reed v. Nevins, 77 N.M. 587, 425 P.2d 813 (1967); J. A. Silversmith, Inc. v. Marchiondo, 75 N.M. 290, 404 P.2d 122 (1965). As noted, there is no attack on the existence of substantial evidence to sustain finding No. 7. Thus we have only to consider whether, in legal effect, the finding is proper. Foreman relies on Thomas v. Gavin, 15 N.M. 660, 110 P. 841 (1910), claiming that a single transaction does not, generally speaking, constitute "engaging in business." We have no criticism of this claim, except it should be pointed out that the above cited case plainly discloses that a single transaction is *but a circumstance* in determining whether or not a party is engaging in business. The trial judge, as the finder of fact, in view of all of the testimony before him and the totality of the circumstances present, determined the existence of a valid lease agreement. There is substantial evidence to support this finding, and, although there is conflict, the finding is not to be set aside under these circumstances. Thomas v. Gavin, supra; Gilmer v. Gilmer, 77 N.M. 137, 419 P.2d 976 (1966); Candelaria v. Miera, 13 N.M. 360, 84 P. 1020 (1906).

Gallup Electric Light Co. v. Pacific Improvement Co., 16 N.M. 86, 113 P. 848 (1911), does not require a different conclusion. In our judgment, neither the trial court, nor do we, place a strained interpretation on the contract, nor is its plain language restricted.

Findings Nos. 7 and 8 both being supported by substantial evidence, there is no necessity in discussing Foreman's requested findings, which were in conflict therewith. In view of the fact that the court gave the

findings which it did, the requested findings in conflict were properly refused.

It follows that the judgment of the trial court should be affirmed. It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.