588 P.2d 1056

James Price **MATHIESON,** James P. Mathieson, Jr., John W. Mathieson, and Joy L. Johnston, **Petitioners-Appellants,**

v.

Michael B. **HUBLER,** Personal Representative of the Estate of Helen C. Mathieson, Deceased, **Respondent-Appellee.**

**Nos. 3236, 3352.**

Court of Appeals of New Mexico.

Nov. 7, 1978.

Writ of Certiorari Denied Dec. 15, 1978.

Steven L. Tucker, Jones, Gallegos, Snead & Wertheim, P. A., Santa Fe, for appellants.

Roger L. Copple, LaFel E. Oman; Sutin, Thayer & Browne, Santa Fe, for appellees.

## OPINION

WOOD, Chief Judge.

These consolidated appeals involve the administration of the estate of Helen C. Mathieson. Cause No. 3236 involves the attempted reopening of the order of the district court adjudicating intestacy and determining heirship. Cause No. 3352 involves an extension of time in which to prosecute a claim against the estate. References to the Probate Code, §§ 32A–1–101, et seq., N.M.S.A.1953 (1976–77 Int.Supp.) are cited only by article and section number. References to the Rules of Civil Procedure, § 21–1–1, N.M.S.A.1953 (Repl.Vol. 4) are cited only by rule numbers. In Cause No. 3236 we discuss: (1) 3–412 of the Probate Code; (2) applicability of Rule 60(b); and (3) inherent power to reopen. In Cause No. 3352 we discuss: (4) the interrelationship of 3–804(C) and 3–806(A) of the Probate Code; and (5) applicability of Rule 6(b).

The two sons of Helen, Michael B. Hubler and William K. Mathieson, applied for the informal appointment of Michael as the personal representative of the estate. The probate court granted the application. There is no issue as to these proceedings or as to Michael's status as personal representative.

Thereafter, Helen's sons, pursuant to 3–402(C), by verified petition, asked the district court for an adjudication of intestacy, determination of heirship and supervised

administration. The petition alleged that Helen had married twice and that both marriages ended in divorce. The petition also alleged that Helen had two surviving sons, Michael and William. Notice of hearing on this petition was given by publication and by mailing to the last known addresses of the former husbands and to children of the second former husband. 1–401. The first husband was Hubler, the second husband was Mathieson. Mathieson's children, of a prior marriage, are James P. Mathieson, Jr., John W. Mathieson and Joy L. Johnston. They are referred to hereinafter as "the stepchildren".

In addition to the notice by publication and by mail, the first husband, Hubler, and each of the stepchildren executed an "acknowledgment of service, disclaimer, and waiver of notice". These acknowledgments were filed in the court file at the time of the hearing. The acknowledgment "admits the statements contained in said Petition are true; disclaims any lien upon or any right, title or interest in or to the estate of the decedent except in the event of subsequent testacy; consents to the entry of the order requested in said petition". The second husband, hereinafter referred to as Mathieson, executed the same acknowledgment prior to the hearing. However, it was not filed until a later date. All of the acknowledgments are under oath.

At the hearing on the petition, the trial court found that "the matters requested by the Petitioners are unopposed." The trial court adjudged that Helen left no will, that her only heirs were the sons, Michael and William, who were the only persons entitled to distribution of Helen's estate. It also adjudged that proceedings should be subject to supervised administration. The trial court's order was filed April 1, 1977.

On May 3, 1977 Mathieson and the stepchildren filed a petition which requested that the order of April 1, 1977 be "set aside" and to "reopen this matter, and make a true and complete redetermination of the facts concerning the testacy or intestacy of Helen C. Mathieson, a truthful and proper redetermination of heirship". On appeal, Mathieson and the stepchildren quibble as to what they sought by this petition. They claim they did not seek vacation or modification of the order of April 1, 1977, see 3–412, but only that they be given a hearing at which they would have opportunity to show that the order of April 1, 1977 should be vacated or modified. Arguments before the trial court show they sought alternative relief, either that the April 1, 1977 order be vacated or "a thorough and contested inquiry into the issues" of testacy and heirship.

■ The alternative claims made by the petition of May 3, 1977 sought relief under 3–412, Rule 60(b), and the inherent power of the court. We discuss each of those claims. The appellate argument raised an issue as to the evidentiary material before the court when it ruled on the petition of May 3, 1977. Mathieson and the stepchildren seem to argue that the evidentiary material to be considered is limited to the testimony taken at the hearing held May 31, 1977. We disagree. The trial court could properly consider the sworn application of Michael and William when they sought a formal adjudication of intestacy, the evidence tendered by Mathieson and the stepchildren at the hearing of May 31, 1977, the evidence tendered by Michael at the hearing of July 14, 1977, and affidavits filed on behalf of both parties, prior to the July 14th hearing. All of this material was before the court and referred to in arguments of counsel, without objection, at the July 14th hearing.

*3–412*

The pertinent portion of 3–412 reads:

A. Subject to appeal and subject to vacation as provided in this section and in Section 3–413 [32A–3–413], a formal testacy order under Sections 3–409 through 3–411 [32A–3–409 to 32A–3–411], including an order that the decedent left no valid will and determining heirs, is final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant

to the question of whether the decedent left a valid will, and to the determination of heirs, except that:

(1) the court shall entertain a petition for modification or vacation of its order and probate of another will of the decedent if it is shown that the proponents of the later-offered will were unaware of its existence at the time of the earlier proceeding or were unaware of the earlier proceeding and were given no notice thereof, except by publication;

(2) if intestacy of all or part of the estate has been ordered, the determination of heirs of the decedent may be reconsidered if it is shown that one or more persons were omitted from the determination and it is also shown that the persons were unaware of their relationship to the decedent, were unaware of his death or were given no notice of any proceeding concerning his estate, except by publication;

(3) a petiton [sic] for vacation under either Paragraphs (1) or (2) of this subsection must be filed prior to the earliest of the following time limits:

(a) if a personal representative has been appointed for the estate, the time of entry of any order approving final distribution of the estate, or, if the estate is closed by statement, six months after the filing of the closing statement;

(b) whether or not a personal representative has been appointed for the estate of the decedent, the time prescribed by Section 3–108 [32A–3–108] when it is no longer possible to initiate an original proceeding to probate a will of the decedent; or

(c) twelve months after the entry of the order sought to be vacated;

(4) the order originally rendered in the testacy proceeding may be modified or vacated, if appropriate under the circumstances, by the order of probate of the later-offered will or the order redetermining heirs;

The May 3, 1977 petition to reopen alleged that Mathieson and the stepchildren were "potential heirs or devisees" of Helen. Mathieson alleged, upon information and belief, that Helen died "leaving a validly executed will . . . . In the short time available to his attorneys they have found evidence that such a will was at one time, in the recent past, in existence." Mathieson and the stepchildren alleged they were erroneously omitted from the determination of heirship made in the order of April 1, 1977.

The above allegations break down as follows: 1) Mathieson and the stepchildren claimed they were devisees under a will of Helen's. 1–201(6) and (7). 2) The stepchildren did not claim as heirs, it being undisputed that they were not Helen's children, and no claim was made that they were adopted by Helen. 1–201(17); 2–103, 2–109. 3) Mathieson claimed an as heir. This was a claim that, regardless of the divorce proceedings, he was a "surviving spouse". 1–201(17), 2–102.

On appeal, Helen's sons and the estate argue that the May 3, 1977 petition to reopen raised no issue as to Mathieson's heirship. This is contrary to the position taken in the trial court. Their response to the petition alleged that Mathieson's claim of heirship was an impermissible collateral attack on the Santa Fe County divorce decree. This response attached, as exhibits, copies of Mathieson's appearance in the divorce proceedings, the divorce decree, and the property settlement agreement. Another exhibit to this response was Mathieson's sworn acknowledgment, dated March 30, 1977. The contents of this acknowledgment are the same as the acknowledgments of the stepchildren. In the acknowledgment, Mathieson admitted the statements in the petition for adjudication of intestacy were true and disclaimed any interest in Helen's estate "except in the event of subsequent testacy".

Under 3–412, the order of April 1, 1977 to the effect that Helen left no valid will and determining heirs was "final as to all persons with respect to all issues concerning the decedent's estate that the court considered or might have considered incident to its rendition relevant to the question of whether the decedent left a valid will, and

to the determination of heirs". This final order may be modified or vacated "as provided in this section" and in 3–413. 3–413 is not applicable in this appeal. One basis for modification or vacation is a "later-offered will". 3–412(A)(1). Another basis for modification or vacation is the omission of an heir from the determination of heirs. 3–412(A)(2).

The trial court found: "While afforded an opportunity to do so, the Petitioners [Mathieson and the stepchildren] have not made or have been unable to make any of the showings required by Section 32A–3–412(A)(1) and (2), N.M.S.A.1953." This finding is supported by substantial evidence.

Mathieson and the stepchildren had the opportunity to present evidence at the hearings held on May 31 and July 14, 1977. At the May 31, 1977 hearing, the trial court did remark: "I think I have enough on all of that." This, however, went only to the tender of certain cumulative evidence and did not foreclose evidence that was noncumulative. At the conclusion of the July 14, 1977 hearing, the trial court gave counsel opportunity to "[s]ubmit whatever you deem encessary [sic]." Under the evidence, and by this we mean the testimony, the tender, the sworn pleadings and affidavits presented to the trial court, the trial court could properly rule there was no showing of a will or that Mathieson was an omitted heir. Mathieson and the stepchildren had the burden of producing evidence and the ultimate burden of persuasion as to these matters. 3–407. They failed to meet these burdens.

The evidence concerning the lack of a will need not be reviewed. We comment on the evidence as to Mathieson's heirship, as a spouse, because there seems to be a shifting basis for this claim.

█ Mathieson's sworn disclaimer of any interest in Helen's estate, except insofar as he might be a devisee under a will, is substantial evidence, in itself, to support the trial court's finding that Mathieson had not brought himself within 3–412(A)(2). After executing this disclaimer, Mathieson filed

the May 3, 1977 petition to reopen which was understood by all to attack the validity of his 1964 divorce from Helen. Mathieson filed another sworn pleading on May 3, 1977 entitled "petition and claim". This document alleged that the 1964 divorce in Santa Fe County "was a sham agreed upon in advance between the parties for reasons of business and without the existence of legal grounds for divorce." The trial court ruled that Mathieson and Helen were divorced in Santa Fe County District Court on October 31, 1964. It concluded the validity of that divorce could only be attacked in the divorce proceeding in Santa Fe County District Court. Neither the finding nor conclusion is challenged. This disposes of Mathieson's invalid divorce claim insofar as it is pertinent to this appeal.

█ The "petition and claim" of May 3, 1977 also asserted a claim for support from Helen on the basis of a "non-marital" relationship following this divorce. The details of this claimed non-marital relationship were not involved in the hearings on the petition to reopen, but the fact that Mathieson had, under oath, asserted a non-marital relationship with Helen following the divorce was evidence relevant to Mathieson's assertion that he was a spouse.

After disclaiming as an heir, then claiming an invalid divorce, and also claiming a non-marital relationship following the divorce, Mathieson shifted his position again at the July 14, 1977 hearing. Mathieson's attorney asserted that following the divorce, Mathieson and Helen entered a common-law marriage "by their cohabiting and representing themselves as husband and wife in a number of states". No evidence was introduced or tendered in support of the common-law marriage claim.

The trial court properly denied the May 3, 1977 petition to reopen insofar as it sought modification or vacation of the April 1, 1977 order under 3–412.

█ Mathieson and the stepchildren assert that even if modification or vacation of the April 1, 1977 order was properly denied, the trial court erred in refusing to authorize

an evidentiary hearing at which they could attempt to show grounds for modification or vacation. The claim is that such a hearing is authorized by 3–412(A)(4) which states: "the order originally rendered in the testacy proceeding may be modified or vacated, if appropriate under the circumstances, by the order of probate of the later-offered will or the order redetermining heirs". Mathieson and the stepchildren assert that 3–412(A)(4) contemplates a proceeding to redetermine heirship, if appropriate under the circumstances, and is authority to re-open the April 1, 1977 order independent of the showing required under 3–412(A)(1) and (2).

We disagree; 3–412 requires a showing of a will or an omitted heir. Such a showing is a necessary circumstance without which it would be inappropriate to modify or vacate the "final" order of April 1, 1977. Absent such a showing, there is no basis for modification or vacation "as provided in this section".

*Applicability of Rule 60(b)*

A. The trial court concluded that:

A Petition to Reopen for Full Hearing on Testacy and Heirship can be entertained by this Court only if Petitioners can show that the requirements of Section 32A–3–412(A)(1), (2), (3) and (4), N.M.S.A., 1953, have been met.

Mathieson and the stepchildren had contended that even though they failed to make the showing required by 3–412, the trial court had authority under Rule 60(b) to grant them a hearing in which they could attempt to show a basis for modification or vacation of the order of April 1, 1977. The above-quoted conclusion rejected that contention. Mathieson and the stepchildren assert this was error.

Rule 60(b) states:

(b) *Mistakes — Inadvertence — Excusable neglect—Newly discovered evidence— Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inad-

vertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one [1] year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the proceeding for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

There are two contentions concerning the applicability of the rule.

1. The rule authorizes relief for "a party or his legal representative". There is no issue concerning representative of a party. Helen's sons, and the estate, assert that Mathieson and the stepchildren were not parties and, therefore, do not come within the rule. This assertion is based on a meaning of parties in the technical sense of opposing litigants. See *State v. Chavez*, 45 N.M. 161, 113 P.2d 179 (1941). The meaning of "party" in Rule 60(b) is not limited to this technical sense.

(a) A bill in the nature of a bill of review, at common law, was brought by one techni-

cally not a party to the original action, but whose interests were affected by the court's decree." 7 Moore's Federal Practice, ¶ 60.-15[1] (2d Ed. 1978).

*Moore's*, supra, ¶ 60.15[6] states:

Bills of review were generally maintainable only by parties to the original suit and their privies and would not lie at the instance of a total stranger to the original suit and decree. When new parties whose rights or interests were affected by the decree wished a review thereof before the court rendering the decree, the proper practice was to file a supplemental bill in the nature of a bill of review.

Rule 60(b) abolished bills in the nature of a bill of review; however, the substance of this common-law remedy was preserved by the rule. *Moore's*, supra, ¶ 60.15[7]; see *State v. Romero*, 76 N.M. 449, 415 P.2d 837 (1966). In petitioning to reopen, Mathieson and the stepchildren were claiming they were adversely affected by the order of April 1, 1977, and were seeking relief of the type afforded by a bill in the nature of a bill of review.

(b) The order of April 1, 1977 provided for a supervised administration, which is defined in 3–501(A) as a "single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the district court". In an in rem proceeding, there are no parties in the sense of opposing litigants. In an in rem proceeding, the court may properly hear anyone who claims an interest and who seems in a position to throw light upon the questions under consideration. Such a person is a party in an in rem proceeding. *In re Roeder's Estate*, 44 N.M. 429, 103 P.2d 631 (1940); compare *In re Morrow's Will*, 41 N.M. 723, 73 P.2d 1360 (1937).

For each of the above reasons, Mathieson and the stepchildren were parties within the meaning of Rule 60(b).

2. As originally enacted, 1–304 provided: Unless specifically provided to the contrary in the Probate Code, or unless inconsistent with its provisions, the Rules of Civil Procedure govern formal proceedings under the code.

A 1978 amendment, Laws 1978, ch. 159, § 3 which enlarged this section to apply to informal as well as formal proceedings, is not applicable. The proceedings in this case were begun in 1977 and were formal proceedings. 3–401(A).

■ It is not specifically provided that Rule 60(b) is inapplicable. The estate's claim is that Rule 60(b) is inconsistent with provisions of the Probate Code and therefore inapplicable. We recognize there can be inconsistencies where the Probate Code would control. Compare the time requirements of 3–412 with the time requirements of Rule 60(b); particularly compare the time provisions applicable to fraud in 1–106 with Rule 60(b). It is inappropriate, however, to consider "inconsistency" as a general proposition; rather, we consider the Rule 60(b) claims made and, where necessary, decide whether they are inconsistent with the Probate Code. Mathieson and the stepchildren have made three claims under Rule 60(b).

(a) The petition to reopen alleged fraud. It is unnecessary to determine whether the fraud relief provisions in Rule 60(b) are inconsistent with 1–106. Mathieson and the stepchildren requested the trial court to find that execution of the acknowledgments, referred to earlier in this opinion, were obtained "through false representations as to their legal significance." The trial court refused to so find; rather, it found: "No fraud has been perpetrated upon the Petitioners." The evidence sustains the finding of the trial court. Thus, inconsistency as to fraud relief need not be decided.

■ (b) In their brief-in-chief, Mathieson and the stepchildren argued that the trial court erred in failing to grant the petition to reopen under Rule 60(b)(6), which authorizes relief for "any other reason justifying relief". No claim was made in the trial court that a hearing should be accorded under Rule 60(b)(6). This theory was raised for the first time in the brief-in-chief. Accordingly, no claim under Rule 60(b)(6) is

**390**

before us for review. Civ.App.Proc. Rule 11. We add that the evidence fails to show the exceptional circumstances required for relief under Rule 60(b)(6). *Parks v. Parks*, 91 N.M. 369, 574 P.2d 588 (1978).

■ (c) Mathieson and the stepchildren contended, in the trial court and at oral argument, that they were entitled to a hearing under Rule 60(b)(1), which provides for relief for mistake, inadvertence, surprise, or excusable neglect. Relief on these grounds would not be inconsistent with the grounds for relief stated in 3–412. There being no issue as to timeliness under either Rule 60(b)(1) or 3–412, we hold the trial court had authority to grant a hearing under Rule 60(b)(1). The trial court erred in holding to the contrary.

B. Since Rule 60(b)(1) did authorize relief, Mathieson and the stepchildren contend the order denying the petition to reopen must be reversed. Relying on oral remarks of the trial court, they assert the trial court was of the view that it had no authority to grant such relief and therefore did not consider whether relief should be granted. We disagree.

■ 1. *Moore's*, supra, ¶ 60.28[3] at page 412 states that "Rule 52 does not literally require the court to make findings of fact and conclusions of law in connection with a 60(b) hearing. Many courts do, however, follow the commendable practice of making findings and conclusions where there has been a hearing on the evidence." The trial court did make findings and conclusions. The trial court's oral remarks were subject to change at any time before entry of its decision. *Stone v. Stone*, 79 N.M. 351, 443 P.2d 741 (1968). Accordingly, the oral remarks do not establish what the trial court ultimately decided. Although findings and conclusions were not literally required, they do show what the trial court ultimately decided.

2. We have previously pointed out that the trial court ruled that it had no authority to grant relief under Rule 60(b). The trial court also made alternative rulings. "Rule 60(b) . . . *does not authorize the re-*

*lief requested in the Petition* to Reopen and For Full Hearing on Testacy, Heirship, and Appointment of Personal Representative". (Our emphasis.) "The Petition to Reopen for Full Hearing . . . is hereby denied." "All Requested Findings . . . and Conclusions . . . inconsistent herewith are hereby specifically denied."

The alternative rulings are distinct from the ruling that Rule 60(b) was not applicable; the alternative rulings are rulings that relief should not be granted under Rule 60(b)(1).

C. Why didn't Rule 60(b) authorize the relief requested in the petition to reopen? *Springer Corporation v. Herrera*, 85 N.M. 201, 510 P.2d 1072 (1973) states:

Two issues arise on every application to open or vacate a judgment, namely, the existence of grounds for opening or vacating the judgment, and the existence of a meritorious defense or cause of action, as the case may be. . . .

Actually, there is no universally accepted standard as to what satisfies the requirement that a party show a meritorious defense. . . . We think that matter is best left to the discretion of the trial judge—as is the decision regarding whether a good excuse has been shown. We must insist, however, that in exercising its discretion the trial court apply a liberal standard.

1. The grounds, the good excuse, in seeking to reopen in this case were mistake, inadvertence, surprise, or excusable neglect.

(a) There is nothing showing surprise; the evidence is undisputed that Mathieson and the stepchildren were notified of the hearing which resulted in the order of April 1, 1977. The unchallenged finding of the trial court is that Mathieson and the stepchildren "were afforded all of the rights and opportunities provided by law with respect to the April 1, 1977, hearing." We add that Mathieson and the stepchildren did not request a finding on surprise.

■ (b) Evidence was introduced concerning inadvertence or excusable neglect. This evidence was, basically, that Mathieson

and the stepchildren lived in different localities, and because of the time provisions under the Probate Code and because of distance factors, they were unable to consult with one another or with counsel. While this evidence was an excuse, the trial court could properly consider this was not a "good" excuse under *Springer Corporation v. Herrera,* supra. Mathieson and the stepchildren were promptly notified of Helen's death on February 6, 1977; they attended her funeral; they did nothing toward instituting probate proceedings; when notified of the hearing on the petition for adjudication of intestacy, they executed the acknowledgments under oath, but "did not file any instrument or pleading or appear in person or by an attorney at the hearing on April 1, 1977." We add that Mathieson and the stepchildren did not request a finding on inadvertence or excusable neglect.

■ (c) Evidence was introduced concerning mistake. This evidence was to the effect that the "acknowledgments" executed by Mathieson and the stepchildren were executed under the mistaken belief that their legal rights would not be affected and there was no intent on the part of any of them to relinquish or, in any way, impair any rights they might have in relation to the property involved in the estate. The trial court was requested to find that "the Acknowledgments resulted from mistake of fact and law." The trial court's refusal of this requested finding had the effect of a finding against Mathieson and the stepchildren on the "mistake" ground for relief. *Lopez v. Barboa,* 80 N.M. 338, 455 P.2d 842 (1969); *State ex rel. Thornton v. Hesselden Const. Co.,* 80 N.M. 121, 452 P.2d 190 (1969). We add, that under the evidence and the permissible inferences, the trial court could properly find there was no mistake.

■ (d) Apart from the evidence, is any effect to be given to the failure to request findings on surprise, inadvertence, or excusable neglect? The rule is that a failure to request a finding on an ultimate issue is a waiver of findings on that issue. *Worland v. Worland,* 89 N.M. 291, 551 P.2d 981 (1976); *Goldie v. Yaker,* 78 N.M. 485,

432 P.2d 841 (1967). The question arises because findings were not "literally required" on the petition to reopen. We hold the rule is applicable because Mathieson and the stepchildren submitted requested findings. Having omitted from their requested findings any request for findings on surprise, inadvertence, or excusable neglect, Mathieson and the stepchildren waived findings as to those issues.

(e) In summary, applying the liberal standard of *Springer Corporation v. Herrera,* supra, there is nothing showing the trial court abused its discretion in denying the petition to reopen in connection with the "good cause" issue.

■ 2. Concerning the meritorious claim issue, the trial court found:

14. Prior to April 1, 1977, Michael B. Hubler and William K. Mathieson exercised reasonable diligence to discover a duly executed, valid and unrevoked Last Will and Testament of the decedent.

15. Subsequent to April 1, 1977, Michael B. Hubler and William K. Mathieson have continued to exercise reasonable diligence to discover a duly executed, valid and unrevoked Last Will and Testament of the decedent as evidenced by the Order of this Court entered April 21, 1977, which declared the February 19, 1947, Last Will and Testament of the decedent completely revoked.

Mathieson and the stepchildren assert these findings are not supported by substantial evidence, but make no effort to state the substance of all evidence bearing on these findings as required by Civ.App. Proc. Rule 9(d). We add that substantial evidence supports these findings.

Mathieson has not challenged the finding that he was divorced from Helen in Santa Fe County District Court in 1964, and has not challenged the ruling that the validity of the divorce cannot be attacked in these probate proceedings.

The oral claim of Mathieson's attorney is that subsequent to the divorce, Mathieson and Helen entered a common-law marriage, but there is no evidentiary support for this claim.

There is also the finding, previously discussed that, although having the opportunity to do so, Mathieson and the stepchildren have been unable to make the showings required by 3–412(A)(1) and (2). Thus, although having the opportunity to do so, Mathieson and the stepchildren have been unable to show there was a valid will or an omitted heir.

In *Springer Corporation v. Herrera*, supra, a *claim* of a meritorious defense was held sufficient to meet the meritorious defense requirement. However, *Springer* does not discuss the situation in this appeal—an opportunity was afforded to show a basis for a meritorious claim and with that opportunity, the showing could not be made. The fact of the opportunity distinguishes *Springer*.

Applying the liberal standard of *Springer Corporation v. Herrera*, supra, there is nothing showing the trial court abused its discretion in denying the petition to reopen in connection with the meritorious claim issue.

D. Mathieson and the stepchildren remind us that under this Rule 60(b) issue, the question is whether they "can reopen this proceeding to prove their claims . . . to pursue discovery, to prepare for a full hearing on the merits, and to participate in a full hearing on the merits at which their substantive claims will be decided by the Court." We have been aware of this question throughout our discussion of the Rule 60(b) issue. Our answer, again, is that the trial court ruled that Rule 60(b) did not authorize the relief requested. This ruling was not an abuse of discretion under the showing made as to the two requisites for reopening—grounds for reopening and meritorious claim.

E. The trial court found:

23. The prompt and orderly administration of this estate *may* be impeded to the detriment of the estate and the heirs of the decedent if the Order of April 1, 1977, is set aside or reopened on the basis of the matters which have been presented or asserted by the Petitioners. (Our emphasis.)

Mathieson and the stepchildren assert this finding is not supported by substantial evidence. Our answer is that this finding was unnecessary to support the order denying the petition to reopen. Mathieson and the stepchildren failed to make a sufficient showing so that a refusal to reopen would have been an abuse of discretion. An erroneous finding, unnecessary to support the court's order, is not grounds for reversal. *Specter v. Specter*, 85 N.M. 112, 509 P.2d 879 (1973).

However, the finding does have substantial evidentiary support. The finding refers to matters "presented or asserted". Those matters, under this record, are no more than speculative claims made subsequent to the intestacy adjudication hearing, of which Mathieson and the stepchildren had notice, and at which they failed to appear. Hearings were held in May and July, at which Mathieson and the stepchildren had the opportunity, but failed, to show their claims were more than speculation. The prompt and orderly administration would, rather than might, be impeded by an order authorizing still more hearings on the basis of the showing made.

*Inherent Power to Reopen*

Mathieson and the stepchildren assert that the trial court had inherent power to reopen, independent of Rule 60(b). Assuming this is true, they receive no benefit. "With reference to the claimed abuse by the trial court in refusing to reopen the case, we would point out that we have consistently held that such a determination is within the sound discretion of the trial court and will not be lightly overturned." *Foreman v. Myers*, 79 N.M. 404, 444 P.2d 589 (1968). There being no abuse of discretion in denying the petition to reopen under Rule 60(b), there was no abuse of discretion in denying the petition under the asserted inherent power of the trial court.

*Interrelationship of 3–804(C) and 3–806(A)*

The "claim" portion of Mathieson's "petition and claim" filed May 3, 1977, asserted

three claims against the estate. Notice of disallowance of these claims was mailed to Mathieson and his attorney on May 9, 1977. The notice of disallowance was filed in the court file on May 11, 1977.

On September 8, 1977 Mathieson mailed to counsel for the estate a request for an extension of time "for pursuing allowance of his claim". This request was filed in the court file on September 13, 1977. After a hearing, the request was granted over the estate's objection. The trial court's order, filed October 27, 1977 extended the period for claim prosecution; "he shall have twenty (20) days from the entry hereof to commence such proceedings against the Personal Representative."

The pertinent portions of 3–804 state:

Claims against a decedent's estate may be presented as follows:

A. The claimant may deliver or mail to the personal representative a written statement of the claim indicating its basis, the name and address of the claimant and the amount claimed, or he may file a written statement of the claim with the district court. The claim is presented on the first to occur of receipt of the written statement of claim by the personal representative, or the filing of the claim with the district court. If a claim is not yet due, the date when it will become due shall be stated. If the claim is contingent or unliquidated, the nature of the uncertainty shall be stated. If the claim is secured, the security shall be described. Failure to describe correctly the security, the nature of any uncertainty, and the due date of a claim not yet due does not invalidate the presentation made.

&ast; &ast; &ast; &ast; &ast; &ast;

C. If a claim is presented under subsection A of this section, no proceeding thereon may be commenced more than sixty days after the personal representative has mailed a notice of disallowance. However, in the case of a claim which is not presently due or which is contingent or unliquidated, the personal representative may consent to an extension of the sixty-day period, or to avoid injustice, the

district court, on petition, may order an extension of the sixty-day period, but in no event shall the extension run beyond the applicable statute of limitations.

Mathieson did not commence a proceeding against the personal representative within sixty days after notice of disallowance of his claim was mailed on May 9, 1977. Rather, one hundred twenty-two days after notice of disallowance was mailed, and sixty-two days after the expiration of the sixty-day period for commencing a proceeding against the personal representative, Mathieson sought an extension of the time for commencing such a proceeding.

■ Authority for extending the time is stated in 3–804(C). Extensions may be granted only for claims not presently due, contingent or unliquidated. The claims filed by Mathieson do not inform us whether they came within these classifications, but this did not invalidate the claims. See 3–804(A). The briefs dispute whether the claims made are the type of claims for which an extension may be granted. The record is insufficient to determine whether the claims were of the appropriate type. We proceed on the assumption that Mathieson's claims were either not presently due, contingent or unliquidated.

The personal representative did not consent to an extension.

The court may order an extension "to avoid injustice". There is no contention that the extension was improperly granted under this "justice" requirement.

The estate claims the trial court lacked authority to grant the extension. Its position is that extensions of time may not be granted under 3–804(C) after the sixty-day period has expired. The estate relies on 3–806(A), which states:

A. As to claims presented in the manner described in section 3–804[32A–3–804] within the time limit prescribed in section 3–803[32A–3–803], the personal representative may mail a notice to any claimant stating that the claim has been disallowed. If, after allowing or disallowing a claim, the personal representa-

tive changes his decision concerning the claim, he shall notify the claimant. The personal representative may not change a disallowance of a claim after the time for the claimant to file a petition for allowance or to commence a proceeding on the claim has run and the claim has been barred. *Every claim which is disallowed in whole or in part by the personal representative is barred so far as not allowed unless the claimant files a petition for allowance in the district court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance or partial allowance.* Failure of the personal representative to mail notice to a claimant of action on his claim for sixty days after the time for original presentation of the claim has expired has the effect of a notice of allowance. (Our emphasis.)

"Barred" in 3–806(A) means a barrier, which if interposed, prevents legal redress or recovery. See "barred" in Black's Law Dictionary (4th Ed. 1951). If the time may be extended under 3–804(C) after expiration of the sixty-day period, then "barred" in 3–806(A) would not be given effect as a barrier.

■ We are to give effect to all of the provisions of a statute. We are also to reconcile different provisions so as to make them consistent and harmonious. *Fort v. Neal*, 79 N.M. 479, 444 P.2d 990 (1968); *State v. Scarborough*, 78 N.M. 132, 429 P.2d 330 (1967).

■ Applying the above stated rules of construction, 3–806(A) is to be applied as stated. A disallowed claim is barred unless the claimant files a petition for allowance in district court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance or partial disallowance. 3–804(C) is consistent and harmonious with 3–806(A) if the extension authorized by 3–804(C) is granted prior to expiration of the sixty-day period.

We hold that the trial court had no authority, under 3–804(C) to extend the time for proceeding against the personal representative after the sixty-day period had expired. This holding is consistent with New Mexico decisions prior to enactment of the Probate Code which required actions based on the denial of a claim to be brought within the statutory time period. See *Levers v. Houston*, 49 N.M. 169, 159 P.2d 761 (1945); *Buss v. Dye*, 21 N.M. 146, 153 P. 74 (1915). This holding is also consistent with the statutory purpose of promoting a speedy and efficient system for the settlement of estates. 1–103; see *Levers v. Houston, supra*. See also *Barnett v. Hitching Post Lodge, Inc.*, 101 Ariz. 488, 421 P.2d 507 (1966); 3 Bancroft's Probate Practice, § 879 (2nd Ed. 1950).

*Louisiana Power & Light Company v. Lasseigne*, 255 La. 579, 232 So.2d 278 (1970) discussed extension of the return day for an appeal as follows:

The word *extend* is used in the Code and in the Revised Statutes in its usual and ordinary sense, meaning to increase the duration of, to lengthen, or to prolong. That which no longer exists, that which has terminated, cannot be extended.

*State v. Scott*, 113 Mo. 559, 20 S.W. 1076 (1893) states: "The word 'extended,' as employed in this statute, means 'prolonged;' and of course a prolongation of time cannot occur after the time originally limited has expired."

3–804(C) states the trial court "may order an extension of the sixty-day period". Once the sixty-day period has expired there is nothing to extend. *Schlosser Leather Co. v. Gillespie*, 157 Tenn. 166, 6 S.W.2d 328 (1928). See also *In re Parent*, 30 F.Supp. 943 (D.N.H.1940). *In re Estate of Herskowitz*, 342 So.2d 530 (Fla.App.1977) is to the contrary but is not persuasive. In *Herskowitz* the trial court's refusal to extend the time for filing a claim was reversed because good cause was shown. *Herskowitz*, however, does not discuss the propriety of granting an extension after the time limitation had expired.

*Applicability of Rule 6(b)*

Rule 6(b) states:

(b) *Enlargement.* When by these rules or by a notice given thereunder or by order of court, an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion (1) with or without motion or notice, order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done; but it may not extend the time for taking any action under Rules 50(b), 50(c)(2), 52B(b), 59(b), (d) or (e), 60(b) or 62(d), or any Supreme Court Rule, except to the extent and under the conditions stated in them.

Part 2 of the rule authorizes a trial court to permit an act to be done after the expiration of the specified time period. The act which may be permitted to be done must, however, be an act allowed to be done "by these rules".

█ Rule 6(b) "is limited to such matters as arise under the rules of civil procedure or by order of the court, and not to periods of time which are definitely fixed" by statute. *Lusk v. Lyon Metal Products,* 9 F.R.D. 250 (W.D.Mo.1949). The rule does not authorize the trial court to extend a time period fixed by statute. *United States v. Easement and Right-of-Way,* 386 F.2d 769 (6th Cir. 1967); *Carroll v. Manufacturers Trust Co.,* 14 F.R.D. 84 (S.D.N.Y.1952), aff'd, 202 F.2d 714 (2d Cir. 1953).

█ Mathieson contends that 1–304 authorizes an extension under Rule 6(b). 1–304 provides that the rules of civil procedure govern in this case "unless inconsistent" with the provisions of the Probate Code.

3–806(A) provides that a disallowed claim is "barred" unless a petition for allowance is filed or a proceeding is commenced "not later than" sixty days after the mailing of notice of disallowance. Thus, the statute states a limitation, beyond which, the claim is barred. See *Anderson v. McNally,* 150 Cal.App.2d 778, 310 P.2d 975 (1957); *Bancroft,* § 879, supra. Rule 6(b) may not be applied to extend the time because such an extension would be inconsistent with the barring of a disallowed claim unless proceedings were commenced not later than sixty days after mailing of notice of disallowance.

Neither Rule 6(b) alone nor Rule 6(b) in conjunction with 1–304, authorized the extension granted by the trial court.

The order in Cause No. 3236, denying the petition to reopen, is affirmed. The order in Cause No. 3352, extending the time for commencing proceedings on a disallowed claim after the sixty-day period had expired, is reversed. The cause is remanded with instructions to set aside the order in Cause No. 3352 which extended the time and to dismiss any proceedings instituted pursuant to that order.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.